CROSBY, administrator of Balbi, deceased *v.* BERGER and others, executors of Duvet, deceased.

---

A party defendant who denies a complainant's claim and insists upon a right to a fund, cannot raise the objection that an intermediate person, through whom the fund came, should be a party. Such person must protect and prove his own possession.

Marriage contract made *bona fide* in France and not repugnant to our laws will be recognized as a valid contract here and be interpreted according to the French laws. It does not become repugnant from allowing the wife to acquire property by reciprocal gift differently to our own laws.

---

April 13,
1842.

Pleading.
Party.
Marriage
contract
made in
France.

THE bill was filed by John P. Crosby, as administrator of the estate and effects of Sophie Catharine Caroline Balbi; and it set forth that in France and on the fourteenth day of August, one thousand eight hundred and four, the said Sophie contracted marriage with Jean Luc Jerome Armand Balbi, as by the registry of marriages in the first arrondissement of the prefecture of the department of the Seine, &c. would appear. Also that, in contemplation of such marriage, certain articles, in the French language, were drawn up and executed between the said intended husband and the said Sophie, before public notaries and with the consent of the mother of the said Jean, whereby it was declared that the said intended husband made a gift to his intended wife of sixty thousand francs in gold or silver specie, which sum he engaged to pay over to his intended wife on her first demand; and the said intended husband and wife made a mutual donation in favor of the sur-

vivor of either of them, which they reciprocally accepted, to wit, the said intended husband to his said intended wife of the absolute ownership of all the property which should belong to him at the time of his decease and the said intended wife to her said intended husband of the absolute ownership of one quarter of the property which should belong to her at the time of her decease ; and if she should die without posterity, then of the whole of her said property without reservation ; the property of which such donation should consist to be by such survivor held and enjoyed from the day of the other's decease ; but with a reservation, in respect to the said mutual donations, that they should not prejudice the right which the said intended husband and wife each reserved to themselves of disposing to whomsoever they might think proper, either by gift, grant or by last will and testament to the amount of one hundred thousand francs—it being agreed that this sum, if it should not have been disposed of or what might remain of it if a part only should have been disposed of, should continue to form a part of the property granted in the same manner as if the reservation had not been made. Also that, after the marriage, the said Jean and Sophie resided for some time in Paris, but, from difficulties of various kinds, the said Jean ultimately came to New-York. That when they left France the whole of the said donation of sixty thousand francs, which, by the said marriage contract, the said Jean Luc Jerome Armand Balbi engaged to pay to his said wife, except the sum of twenty-three thousand six hundred and seven francs receipted on the said contract, was unpaid and had never since been paid to his said wife ; and that the complainant, as administratrix as aforesaid, claimed to be entitled as creditor of the estate of the said Jean. That from the time he so left France, he had not contributed any thing to the support of the said Sophie and that she had been very much straightened in her circumstances. That the said Jean Luc Jerome Armand Balbi died in New-York in the month of September one thousand eight hundred and thirty-nine, having made his will, whereby, after making provision for his debts and funeral expenses, he gave, devised and bequeathed unto one Divine Duvet, late of New-York but since deceased, her heirs, executors, administrators

and assigns for ever all the residue of his estate and effects and appointed her sole executrix.

The complainant charged that the said will of the said Balbi and the devise and bequest therein made, being in violation of the obligations of the said marriage contract, were null and void; and that the said Divine Duvet never had any valid or beneficial right, title or interest in the said estate of the said Balbi as against the said Sophie Catharine Caroline Balbi, but that the said Divine Duvet was to be deemed, in equity, as a trustee for the said Sophie and bound to account for and pay and deliver over to the latter all the said estate, after payment of debts and funeral expenses. Also the said complainant, in his bill—while he believed that the said Jean and the said Divine Duvet cohabited together and while some marriage ceremony might have been had between them—insisted that there could be no lawful marriage : as the said Sophie was alive. That before the latter, the said Sophie, could effectually establish or protect her rights in the estate of her husband she died, leaving Sophie Marie Simons, her daughter by a former husband, her only child, next of kin and heir at law her surviving; and whereby the said Sophie Marie Simons (who was also a native of France) became entitled to all the estate of the said Sophie Catharine Caroline Balbi. That on a proper petition and application, the complainant had been duly appointed by the surrogate of the county of New-York administrator of the estate and effects of the said Sophie Catharine Caroline Balbi. Also that the said Divine Duvet died on the eighth day of November one thousand eight hundred and forty-one, leaving a will and therein appointing the present defendants her executors. And the complainant submitted that, as such administrator as aforesaid, he was entitled to recover from the said defendants, as such executors, out of the estate so left by the said Divine Duvet, the full amount of the balance due to the complainant's intestate (the said Sophie Catharine Caroline Balbi, from the estate of her aforesaid· husband, on account of the donation of sixty thousand francs made in the marriage articles as aforesaid. Also the said complainant, as such administrator, submitted that he was also entitled, under and by virtue of the said mutual dona-

tion made in the said marriage articles, in favor of the survivor and by virtue of the said complainant's intestate—the said Sophie Catharine Caroline Balbi having survived her said husband—to recover from the said defendants, as executors of the said Jean Luc Jerome Armand Balbi, all the goods, chattels, lands, mortgages, notes, stock and other personal estate existing in specie in their hands at the time of his death or which, having previously belonged to him, were by him in his lifetime given to the said Divine Duvet or which had been purchased or acquired by her by means of money or other property received by her from the said Balbi (except such parts as might be required to pay his debts) as well as entitled to recover, out of any other personal estate left by the said Divine Duvet and which had come to the hands of the said executors and out of the real estate so left by her, the full value of all the personal estate which had come to the hands of the said Duvet from the said Balbi. *Prayer* accordingly.

Two of the executors put in a plea as follows; "that it appears by the said complainant's own showing that the marriage contract set forth and pretended in the said bill to have been made and entered into by and between the said Sophie Catharine Caroline Balbi deceased and John Luc Jerome Armand Balbi deceased, stipulates and covenants expressly to the effect that the mother of the said John Balbi deceased, Anne Jacobe Nompar Caumont La Force (commonly called and known as Countess Balbi) should preserve her rights, according to the terms of the laws and that she should not be prejudiced by the reciprocal donations therein contained, in case she should survive M. Balbi her son ; and these defendants do further plead to the said bill of complaint that the said Ann Jacobe Nompar Caumont La Force, Countess Balbi, did survive her said son and is now residing at or near Paris in the kingdom of France, where the said contract is alleged to have been executed. And these defendants do further plead that the said John Balbi, deceased, died without leaving any issue him surviving or any descendants of any such issue, and without leaving any brother or sister or any descendants of such brother or sister him surviving ; that he left no ascendant heir on the paternal line to the knowledge of these defendants. And these defendants further plead to the said bill that there

" was not, to their knowledge, any collateral heir on the pater-
nal line of the said John Balbi, deceased, in existence at the time
of the death of the said Balbi ; and these defendants further
plead to the said bill that by the terms and provisions of the
laws of France in force at the date of the said alleged contract
and ever since, in case of any person dying without issue and
without leaving any brother or sister or any of their descend-
ants him surviving, the succession to his estate was divided
by moieties between the ascendants of the paternal line and
the ascendants of the maternal line ; and in case there were
no ascendants in either of such lines, then the moiety which
would have devolved on such ascendants, if they had survived,
descended to the nearest relatives within the twelfth degree,
inclusive of the deceased in such deficient ascendant's line ;
except that the surviving father or mother became, by the
terms and provisions of the said French laws, entitled to the
usufruct of one-third of the property to which such father or
mother so surviving did not succeed in absolute property,
and in default of all such collateral heirs, then the whole suc-
cession devolved on the surviving ascendant of the other line.
And these defendants further plead to the said bill that by the
terms and provisions of the said French laws herein before
referred to, in any and all of the foregoing cases, the wife sur-
viving would take no part or portion of the estate of her de-
ceased husband, where a separation of goods existed by the
marriage contract to the prejudice of any one of the heirs at
law herein before stated and set forth ; and these defendants
humbly insist and submit to this honorable court that, by the
terms and provisions of the said French laws above set forth
and by virtue of the said reservation of her rights and the cov-
enant and stipulation to the effect herein before set forth, the
said Ann Countess Balbi, mother of the said John Balbi, de-
ceased, became and was and is the sole heir at law and next
of kin of the said John Balbi, deceased ; and these defendants
do therefore plead to the said complainant's bill of complaint
that the said Ann Jacobe Nompar Caumont La Force, Coun-
tess Balbi, is a necessary party to said bill and ought to be
made party hereto, as these defendants are advised."

The cause came up on a motion for a writ of injunction ;
and the plea was read as an affidavit.

Mr. *J. L. Mason*, for the complainant.

Mr. *Lockwood*, for the defendants.

1842.

CROSBY
*v.*
BERGER.

THE VICE-CHANCELLOR :—This cause is before me at this *August* 9. time on the bill recently filed and an order calling on the defendants to show cause why an injunction should not issue according to the prayer thereof. The defendants resist the application for an injunction by a plea to the bill, which, being verified, is read as an affidavit of the facts contained in it and also by affidavits of some other matters not in the plea.

The facts will sufficiently appear in the course of my remarks.

For the purpose of determining whether an injunction ought to issue, as a precautionary measure, in this early stage of the suit, it is unnecessary to express a very decided opinion on all the points presented in the case. If the complainant makes out a *prima facie* case of title, it may be sufficient to warrant the granting of the limited injunction asked for. The bill undertakes to trace property to the hands of the defendants as executors of Duvet, deceased, alleged to belong to John Balbi at the time of his death in September, one thousand eight hundred and thirty-nine ; and which upon his demise, as the bill claims, devolved upon the complainant's intestate and became and was her property by virtue of an ante-nuptial contract entered into according to the laws of France, between such intestate and M. Balbi her husband in the year eighteen hundred and four, at Paris, where the parties were then domiciled and where the wife continued to reside until the period of her death in the year eighteen hundred and forty-one. Balbi, the husband, having left France soon after their marriage, became a resident of the city of New York, where he died, leaving his wife surviving him. He had also become a naturalized citizen of the United States.

The bill does not pray for a receiver to take the property out of the hands of the defendants, nor does it ask to have them enjoined from collecting or possessing themselves of the property in their character of executors and trustees under the will of Duvet, but only asks an injunction that they do not " sell, transfer, encumber or in any other way dispose of any

bonds, mortgages, notes, stocks or other personal property which once belonged to said Balbi and which have come to their hands as such executors and trustees." While this suit is pending it is not probable the defendants will feel disposed, much less be willing, to part with the property in dispute, even if not expressly enjoined, and as they are admitted to be men of abundant responsibility to make good the value of the property to the complainant, should it be ultimately adjudged to him, it would seem to be not so essential to the complainant's rights, as necessary to the defendants' own protection, against being called upon to distribute the property according to the trusts of the will under which they act that they should be enjoined by the process of this court. Still, however, if the complainant has shown no right to the property or if, from the facts and the law of the case as now presented, the court can recognize no sufficient title in him to sustain the bill, then the injunction must, from necessity, be refused.

Various objections are taken, growing out of alleged defects of statement in the bill and of a want of necessary and proper parties to the suit. All these objections appear to me untenable. The main object of the bill is to follow and obtain possession of personal property to which the complainant, in his representative capacity, claims title by virtue of the donation in favor of his intestate contained in the marriage articles, under the French law, and to which she became entitled on surviving her husband. This is the foundation of the claim; and enough appears on the face of the bill to support it in the first instance and to put the defendants on the denial of the right asserted. Enough is, likewise, stated as to the kind of property, as to how it passed by gift *inter vivos* or by gift testamentary from M. Balbi to Duvet and as to how and in what capacity the defendants are possessed of it, to put them upon answering the bill and making discovery of all the property once owned by Balbi and of which they have any knowledge or information, as well as how much of such property came to Duvet and has passed onward to them as executors and trustees under her will, and, its value and amount. With respect to the want of parties, the principal objection is that there is no executor or administrator of Balbi before the court.

It is undoubtedly true that before a claim for a debt against

his estate can be decreed or established, some person legally representing him as executor or administrator must be appointed and made a party to the suit. But although the bill in this case does suggest a balance of the 60,000 francs, (mentioned in the marriage articles as a sum which the husband was to pay to the wife on demand) remaining unpaid, as a debt against him and his estate, it is by no means a necessary feature of this bill, which will have to be considered, with a view to a decree for the payment of such balance as a debt. In one aspect of the case the relation of debtor and creditor between the husband and wife may be presented, but it will be quite unnecessary to consider the question whether that relation existed or not at the time of Balbi's death, especially if the complainant can make out a title by survivorship to all the property left by him and which it is the principal, if not the sole object of this suit to establish. For the purpose of trying the question of title, the proper parties defendants are before the court. They (the defendants) are in possession of the property and can defend their possession, not merely by requiring the complainant to prove title paramount to that under which they hold, but paramount to the title of any third person which the defendants may show to exist. If the defendants find they cannot support their own or the title of their testatrix, they will be at liberty to prove title out of the complainant and in somebody else and thus defeat the recovery. This they are endeavoring to put themselves in a position to do by means of their plea of the mother Balbi having survived her son and being entitled, by the law of succession in France and the true construction and meaning of the marriage contract, to take the property in the events which have happened, to the exclusion of the wife, under the reciprocal donation. If this be so, they will be left in possession until such rightful owner comes forward ; and it cannot be necessary to wait for such owner to appear in order to ascertain whether there is such an outstanding ownership or not, since the matter of fact, when put in issue, can be tried between the present parties. It is, indeed, involved in the determination of the question, whether the right or title is in the complainant? which is the only question to be decided ; and the presence of no other persons is necessary as parties to the suit, in order to determine that

Vol. III.—69*

1842.

CROSBY
v.
BERGER.

question but those who have possession of the property and deny the complainant's right to it.

Again, it is urged as an argument as to the want of a proper representative of Balbi before the court, that there may be debts of his unpaid and for which the property claimed may be liable. This objection is, at once, obviated by the consideration that, if the complainant recovers, it will be without prejudice to the rights of creditors. The complainant will take *cum onere*, and the creditors will be at liberty to look to him and to the property as assets for the payment of debts and can pursue their appropriate remedy accordingly.

These objections being disposed of, I come to the main question, which has been elaborately discussed by the respective counsel: in regard to the wife's right under the marriage contract by the law of France, and the matters of fact presented by the plea and affidavits in opposition to the rights claimed for her.

It has been already stated that the claim made in behalf of the wife is founded upon the reciprocal donation contained in the marriage contract, the event of the wife's surviving her husband having occurred so as to cast upon her the title at his death.

There can be no question, as it appears to me, about the validity of this ante-nuptial contract, by the French law. It is such a contract in its terms and provisions as the customary laws of Paris, before the adoption of the *code Napoleon*, allowed to be made, and such as that code, which has superseded the customary laws, undertakes to regulate and approve. The contract appears to have been drawn up and executed with all due formality, according to the provisions of the *code Civil* then in force and still a part of the law of France, so as to render it an effective and binding one between the parties in all future time, in the country where it was made, where the parties were then domiciled and where it is to be presumed their intention was to remain and give effect to it; and there can be as little doubt that, under these circumstances, it is the duty of this court, upon the principle of comity among civilized nations, to interpret this contract and to allow it to have the same effect here that it would have in the domestic tribunals of the parties and to enforce it according to the *lex loci con-*

*tractus* in regard to the persons or property within this juris-

diction that may be affected by or subjected to its operation—
unless, indeed, the case falls within some of the exceptions to
the general rule of enforcing foreign contracts, such as, that it
would be repugnant to the laws of our own state, against pub-
lic policy, a violation of good morals or injurious to our own
interests to do so. I need only refer, for the present, to the
doctrine held by Chancellor Kent, in *Decouche* v. *Savetier*
(3 John Ch. R. 190) ; and to the principles of comity and
international law expounded by Mr. Justice Story in his Com-
mentaries on Conflict of Laws, ch. vii, sec. 241 to 246 ; also
sec. 276, 277.

Some argument has been adduced to show that the con
tract in question, if allowed to prevail, might operate upon
property situated here in a manner repugnant to the rules of
the common law in some respects and in others to the revised
statutes of the state and, therefore, against the policy of our
laws, that it should be enforced. I have not been able to dis-
cover such repugnancy as ought to defeat the object of the bill.
There is something, it is true, in the mode of acquiring pro-
perty by reciprocal or mutual donation between husband and
wife, which is unknown to our laws and different from the
methods we have adopted of making family settlements and
creating trusts, yet to allow this donation to take effect upon
property which has found its way to this country or which
has been acquired here and which was originally intended
by the parties to pass by force of the gift, cannot, I appre-
hend, be attended by any injurious consequences to the peo-
ple of the state or its institutions, nor endanger the morals
of this community and is not so incompatible with our
laws as that it may not be enforced without doing violence to
them.

This brings me to the next important point in the case and,
perhaps, the most important of any, growing out of the matters
of fact set up in the plea, and which, if sustained, goes to de-
feat altogether the wife's right under the marriage contract.
The facts set up are that Balbi the husband, died without issue
and without leaving collateral kindred of any sort surviving
him ; and without lineal ascendants on the paternal side, but
leaving his mother surviving, who, by the law of succession

in France, in default of other heirs, became and is the heir of her son, and, as such heir, it is contended she is entitled, by the terms and true interpretation of the marriage contract, to the property in question in preference to the wife and to the entire exclusion of the donation in her favor. That part of the contract relied on as producing this result is a clause of the 7th article. The mother, as seems to have been necessary, was made a party to the contract and united with her son (the then intended husband) in the execution of the instrument, she contributing or relinquishing some property to and in favor of her son, which is subjected to the contract of donation on his part, and the clause in question is in the form of a reservation in favor of the mother, in these words, according to a literal translation of them into English: " Nevertheless lady Balbi, the mother, remains preserved in her rights, according to the terms of the laws, provided (in case) she shall survive M. Balbi, her son, without that, her appearance at the present contract can bring prejudice to them." The effect of this reservation upon the contract of donation, according to the rules of interpretation and the decisions of the French tribunals, may possibly be to give the property to the mother in the event which has happened and thus to supersede and defeat the wife's right by survivorship. If such is the case, the same rule of construction and the same effect must be given to it here. But I have no evidence before me that the laws of France or the decisions of her courts do so regard it. I presume it is to be construed in all courts and places so as to give effect to the instrument according to the intention of the parties at the time, such intention to be gathered from a careful examination of the whole instrument; and from such an examination and taking into view the nature of the transaction, it seems to me contrary to all reason to suppose that the parties could have intended such a result in any event. To allow the mother's legal rights to attach— while the wife is living—will be to defeat the donation entirely and destroy all reciprocity in the contract; notwithstanding the explicit manner (as appears by the instrument itself) in which the parties (husband and.wife) devoted to each other all the property they might respectively hold (except 100,000 francs, which the husband was to be at liberty to dispose of

otherwise as he might think proper) upon principles of the utmost fairness. During their joint lives, both were to hold their property separately and not *in communauté*, but, at the death of one, the donation was to take effect in favor of the survivor. To this arrangement, so clearly expressed as to admit of no equivocation, the mother was a party, and I think it requires much more explicit and pointed language than is used in the reservation clause to give the mother the right now contended for. If that right prevails, then the donation to the wife must be construed to depend, not merely on the chance of surviving her husband, but on the chance of that husband surviving his mother also ; this double event is not the one provided for in the contract. Nor is there occasion to resort to this forced construction in order to give the reservation clause a legitimate and appropriate meaning and prevent its being deemed entirely nugatory. Had the husband survived his wife and then died intestate in his mother's lifetime without other heirs, she would have been entitled, as now, to all his property, including even the property derived from the wife ; and hence the propriety *ex abundante cautelâ* perhaps, of a declaration reserving her legal rights to property which might devolve upon her, as heir of her son, notwithstanding she had joined in the marriage contract, but not intending thereby to disturb the provisions of that contract or to change the destination which that contract had given to any property he might die possessed of. This view of her reserved rights is in perfect keeping with the principles and terms of the donation ; and it is the business of the courts so to construe the acts of the parties as to reconcile the two and preserve the consistency and harmony of all the parts of the transaction. For these reasons, I think the legal rights of the mother cannot be allowed to prevail over the wife's right by the act of mutual donation and her survivorship.

Some other objections have been raised, such as delay of more than six months in presenting the demand against executors, which certainly can have no application to this case— and all of which are unavailing.

As the case now stands, I am satisfied the complainant has a *prima facie* right to the property which the bill seeks to recover ; and that an injunction is proper both as regards the

its preservation and the protection of the defendants in their fiduciary capacity.

With regard to the plea, which was set down for argument and heard on a day subsequent to the motion for an injunction, it is only necessary to say, that the views I have just expressed are sufficiently decisive of the merits of the plea to require me to overrule it ; but it may be proper, nevertheless, to allow the defendants to set up the same matters of fact and insist upon the same conclusions of law from those facts in their answer. I, likewise, think the plea is informal and bad on its face, in attempting to recite a part of the bill, giving a different version of the statements in the bill from what the pleading itself presents, and setting out matters to take issue upon which had much better be presented for that purpose by way of answer than by plea. I shall, therefore, order that the. plea be overruled, with costs ; but with leave to defendants to set up and rely upon the same matters in their answer.