In the Matter of the Transfer Tax upon the Estate of PAUL A. E. MAJOT, Deceased.

ANNE P. MAJOT, as Administratrix, Appellant; THE COMPTROLLER OF THE STATE OF NEW YORK, Respondent.

Transfer tax — domicile — husband and wife — when law of actual domicile and not of matrimonial domicile controls disposition of movable property owned by husband at time of his death.

Where there is a change of domicile by husband and wife, the law of the actual domicile, and not of the matrimonial domicile, governs as to all future acquisitions of movable property; and as to all immovable property, the law *rei sitæ.*

A husband and wife who married in France under the laws of which country a wife is given a community interest in whatever property her husband had at the time of the marriage, and such as he thereafter acquires, subsequently became residents of this country and acquired real and personal property of which the husband died seized and possessed. *Held,* that the property acquired by the decedent during his residence with his wife in this state is controlled by our laws, and on his death it is transferred within the meaning of our tax laws, and liable to payment of transfer tax under the statute.

Under the French Code, tacit ante-nuptial agreements are not recognized, but they must be express agreements which cannot be changed after the celebration of the marriage, while under our statute every agreement made in consideration of marriage is void unless it be in writing, except a mutual promise to marry. Hence in the absence of an express ante-nuptial contract we cannot recognize tacit contracts of this character. *Matter of Majot,* 135 App. Div. 409, affirmed.

(Argued April 26, 1910; decided June 7, 1910.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered December 17, 1909, which reversed an order of the New York County Surrogate's Court exempting one-half of his estate from payment of a transfer tax.

The facts, so far as material, are stated in the opinion.

*Paul Fuller, Frederic R. Coudert* and *Paul Fuller, Jr.,* for appellant. One-half of the property upon which the tax was levied in the case at bar did not pass under the intestate laws of this state. It belonged to the widow of Majot, by

virtue of the community or partnership existing between herself and her husband, and was hers from the date of the marriage, or from the date of its acquisition subsequent to the marriage. (*Garzot* v. *De Rubio*, 209 U. S. 299; *Beard* v. *Knox*, 62 Am. Dec. 125; *Matter of Miller*, 77 App. Div. 473; *Matter of Hess*, 110 App. Div. 480; *Matter of Kennedy*, 113 App. Div. 6; *Matter of Enston*, 113 N. Y. 174; *Matter of Wolfe*, 137 N. Y. 205; *Matter of Kidd*, 115 App. Div. 210; *Matter of Baker*, 83 App. Div. 530; *Magoun* v. *Ill. Trust Co.*, 170 U. S. 283; *Knowlton* v. *Moore*, 178 U. S. 41; *Plummer* v. *Coler*, 178 U. S. 115; *Murdoch* v. *Ward*, 178 U. S. 139; *Matter of Harbeck*, 161 N. W. Rep. 211.) The tacit contract by adoption of the matrimonial law of the domicile is equivalent in its effect to an express contract, and a change of domicile does not alter or modify the rights acquired by the contract of marriage. (*Bonati* v. *Welch*, 24 N. Y. 157; *Croby* v. *Berger*, 3 Edw. Ch. 567; *Depas* v. *Mayo*, 11 Mo. 314; *De Nicols* v. *Curlier*, L. R. [App. Cas. 1900] 21.) Rights acquired under a marriage contract can be enforced against property in a country other than where the contract was made, and such a contract is not contrary to public policy, but has been upheld in this state from motives of highest public policy. Such contracts, even when altering the rule of the common law, are not repugnant to our policy and laws, and have been enforced. (*De Couche* v. *Savetier*, 3 Johns. Ch. 190; *Bradish* v. *Gibbs*, 3 Johns. Ch. 523; *Le Breton* v. *Miles*, 8 Paige, 261; *Potter* v. *Brown*, 5 East, 124; *Spears* v. *Shropshire*, 66 Am. Dec. 206; *Blanchard* v. *Blood*, 2 Barb. 352; *Beardsley* v. *Hotchkiss*, 96 N. Y. 201; *Strong* v. *Skinner*, 4 Barb. 546; *Young* v. *Hicks*, 92 N. Y. 235; *De Barante* v. *Gott*, 6 Barb. 492; *De Pierres* v. *Thorn*, 4 Bosw. 266.)

*Millard H. Ellison* for respondent. No express contract having been executed by the parties, the rule governs that the law of the country where the deceased was domiciled at the time of his death regulates the succession of his personalty

in case of intestacy. (*Moultrie* v. *Hunt*, 23 N. Y. 394; *Dupuy* v. *Wurtz*, 53 N. Y. 556; *Despard* v. *Churchill*, 53 N. Y. 192; Minor on Conf. of Laws, 328; *Edgerly* v. *Bush*, 81 N. Y. 199.) By voluntarily changing their domicile from France to the state of New York, the rights of the parties are governed by the laws of the state of New York. (Story on Conf. of Laws [8th ed.], 252, 255; *Saul* v. *Creditors*, 4 Martin [U. S.], 569; *Gale* v. *Davis*, 4 Martin [La.], 645.) The law of the situs absolutely governs in regard to all rights, interests, titles, succession and right to succession to real estate. (Gerard on Titles [5th ed.], 111; *White* v. *Howard*, 46 N. Y. 144; *Devo* v. *Morss*, 30 App. Div. 56; *Bonati* v. *Welsch*, 24 N. Y. 157; Whart. on Conf. of Laws [3d ed.], 405; *Ordronaux* v. *Rey*, 2 Sandf. Ch. 33; *Nott* v. *Nott*, 36 La. 109.) Ante-nuptial contracts to be enforceable must be in writing. (*Lamb* v. *Lamb*, 18 App. Div. 250; *Schneider* v. *Schneider*, 122 App. Div. 774; *Brown* v. *Brown*, 8 Hun, 625.)

HAIGHT, J. Paul Auguste Eleonore Majot was a citizen and resident of France and as such married Anne Picat on the 30th day of June, 1885, at Paris, France. Shortly after such marriage they emigrated to this state and became residents thereof and subsequently acquired both real and personal property in this state, of which Paul Auguste Eleonore Majot died seized and possessed on the 7th day of December, 1907. No express ante-nuptial contract existed between them. He left no will and his widow has been duly appointed administratrix of his estate.

Under the French Code a wife is given a community interest in whatever property, real or personal, her husband had at the time of the marriage and such as he shall acquire thereafter; and that by reason thereof it is now claimed on behalf of the widow of the decedent that no transfer tax can be imposed under our statute as to her half interest in the estate, for the reason that there has been no transfer upon his death and that she merely enters into possession of her community interest as it previously existed.

Ordinarily, the law of the place of the domicile of the owner controls with reference to the distribution of his personal property upon his decease, and the law of the place in which his real estate is situate controls with reference to its descent; and, in the absence of an express ante-nuptial contract otherwise providing, the foregoing rule prevails with reference to the disposition of property of married people upon the death of either. If two or more persons should each be the owner of an undivided interest in a specific article of personal property and they should remove to this state, bringing such property with them, their ownership therein would remain unchanged by our law, and in case of the death of either the undivided shares of the others would remain unaffected. As to whether the community interest of a wife in the property of her husband under the French law is such as to constitute her the present and continuing owner during their married life of an undivided one-half interest in his personal property acquired during his residence in France we do not now deem it necessary to determine; for, as we understand, all of the decedent's property, both real and personal, of which he died seized or possessed, was acquired after the removal of himself and wife to this state. While it must be conceded that some conflict exists in the decisions of courts in foreign jurisdictions, we have no hesitancy in reaching the conclusion that, as to the property acquired by the decedent here during his residence with his wife in this state, it is controlled by our laws and upon his death it is transferred within the meaning of our tax laws.

In Rodgers on Domestic Relations (§ 316) it is said: "In a sense the laws of those states where the rule of community property is in force have no extra-territorial effect; that is, the rights, privileges and liabilities incident to the law of this species of property are for those only who marry within the state where the law is in force, or come into it after marriage in good faith, for the purpose of taking up their abode and yielding fealty to its laws. If the marriage takes place in another state, and the parties never live in the state where

the law of community property is recognized, the property rights of the parties must be governed by the laws of the state of their domicile, though they may have property in the state where the rule of community is in force.   It is held in Texas, however, that the rights of the parties, so far as realty situated within that state is concerned, will be governed by the rule of community property in force in that state, though their residence and domicile are in a state where such laws are not recognized.   It is held in Louisiana that where parties are married in France, by the laws of which country there is no community of acquests and gains, and thereafter move to Louisiana, where such laws are effective, with the *bona fide* intention of taking up their abode there, the laws of that state will then govern their rights of property within its bounds. And this ruling is no doubt correct."

In *Gale* v. *Davis* (4 Martin, La., 645, 649) the court says : " It seems now to be a settled principle that when a married couple emigrate from the country where the marriage was contracted into another the laws of which are different, the property which they acquired in the place to which they have removed is governed by the laws of that place."

Story in his work " On Conflict of Laws " (8th ed., at page 267), after referring to many decisions upon the subject in this and other countries, and especially the Louisiana cases, proceeds to give his opinion as to the law of the United States with reference to the question under consideration, as follows : " In general, the doctrines thus maintained in Louisiana will most probably form the basis of the American jurisprudence on this subject.   They have much to commend them in their intrinsic convenience and certainty, as well as in their equity ; and they seem best to harmonize with the known principles of the common law in other cases.   *   *   * The following propositions may be laid down as those which, although not universally established or recognized in America, have much of domestic authority for their support, and have none in opposition to them.   *   *   *   Where there is no express contract, the law of the matrimonial domicile will

3

govern as to all the rights of the parties to their present property in that place, and as to all personal property everywhere, upon the principle that movables have no *situs*, or rather that they accompany the person everywhere. As to immovable property the law *rei sitæ* will prevail. Where there is no change of domicile, the same rule will apply to future acquisitions as to present property. *But where there is a change of domicile, the law of the actual domicile, and not of the matrimonial domicile, will govern as to all future acquisitions of movable property; and, as to all immovable property, the law rei sitæ.* And here also, as in cases of express contract, the exception is to be understood, that the laws of the place where the rights are sought to be enforced do not prohibit such arrangements. For if they do, as every nation has a right to prescribe rules for the government of all persons and property within its own territorial limits, its own law in a case of conflict ought to prevail."

Our attention has been called to no case in this state in which our courts have considered the question now presented. Most of our cases have reference to the descent or distribution of property under express ante-nuptial contracts, and none of them have reference to the power of the state to impose a tax upon such descent or distribution. (*De Barante* v. *Gott*, 6 Barb. 492; *Crosby* v. *Berger*, 3 Edw. Ch. 538; *Le Breton* v. *Miles*, 8 Paige, 261; *Decouche* v. *Savetier*, 3 Johns. Ch. 190.) The appellant, however, calls our attention to *Bonati* v. *Welsch* (24 N. Y. 157), and claims that it sustains her contention. In that case the plaintiff and her husband were residents of France and were married and lived together as husband and wife. Upon the death of her mother the plaintiff became the owner of certain real estate in France which she sold, and the proceeds thereof were appropriated by her husband, who then abandoned her and removed to the United States where he continued to reside until his decease. Under the French law the right of the wife as a creditor of her husband in case of abandonment continued and attached

to the property of her husband. It was accordingly held by our court here, that the husband having appropriated the proceeds of the real estate of his wife which she had inherited from her mother, that she as a creditor was entitled to have her claim paid. In that case no question arose between the creditors. The question was as between the wife, who had had her money appropriated by her husband and brought to this country, and his legatees here. We find nothing in that case that is in conflict with the conclusion which we have reached in this case.

It is now contended that while there was no express ante-nuptial contract, that there was a tacit contract, or a contract to be presumed from the fact that the parties entered into a contract of marriage, and that such tacit contract is deemed to be in accordance with the community law in force in France where the marriage contract was consummated. As we have seen, every government has the right to prescribe laws for the control and distribution of property within its own territorial limits, and while we recognize the validity of contracts made in foreign jurisdictions, if a conflict arises with reference thereto, our own laws must prevail instead of those of a foreign jurisdiction. Under our statute every agreement made in consideration of marriage is void unless it be in writing, except a mutual promise to marry. (Personal Property Law, section 31; *Hunt* v. *Hunt*, 171 N. Y. 396.) It is thus apparent that we cannot recognize tacit ante-nuptial contracts. But we do not understand that our statute differs materially from that of the French law in this regard, for under the French Civil Code relating to community, article 1387 provides that the law regulates conjugal associations in respect of property only in default of *express agreement* which the parties may make as they think fit, provided it is not contrary to morality and subject to the following restrictions. Article 1395 provides that matrimonial agreements may not be altered after the celebration of the marriage. It is thus apparent that under the French Code tacit ante-nuptial agreements are not recognized, but they must be express

agreements which cannot be changed after the celebration of the marriage.

Finally, the power of every government over property within its jurisdiction and territorial limits extends to reasonable taxation for governmental support. (*Heirs of Poydras de la Lande* v. *Treasurer of Louisiana*, 18 How. [U. S.] 192.) In this state a tax is imposed upon the transfer of property, real and personal, of the value of ten thousand dollars or more, at the rate of one per centum upon the clear market value of such property when it passes by such transfer to or for the use of any father, mother, husband, wife, child, etc., when the transfer is by will or by the intestate laws of the state, or when the transfer is made by a resident or by a non-resident when the property is within this state by deed, grant, bargain, sale or gift made in contemplation of the death of the grantor, vendor or donor, intended to take effect in possession or enjoyment at or after such death. This statute was in force at the time of the death of the decedent, and we think is binding upon his widow.

The order of the Appellate Division should be affirmed, with costs.

Cullen, Ch. J., Gray, Vann, Werner and Hiscock, JJ., concur.

Order affirmed.