---

(77 Misc. Rep. 317.)

### In re McELWAINE'S WILL.

(Surrogate's Court, New York County. June, 1912.)

1. WILLS (§ 249*)—PROBATE—DOMICILE OF TESTATRIX.

　　Where the domicile of a married woman, at the time of her death in California, was in the county and city of New York, which was her domicile of origin and her matrimonial domicile, the surrogate of such county had jurisdiction of an application to probate her last will.

　　[Ed. Note.—For other cases, see Wills, Cent. Dig. § 586; Dec. Dig. § 249.*]

2. DOMICILE (§ 3*)—"DOMICILE OF ORIGIN."

　　The "domicile of origin" is defined as the primary domicile of every person subject to the common law.

　　[Ed. Note.—For other cases, see Domicile, Cent. Dig. § 3; Dec. Dig. § 3.* For other definitions, see Words and Phrases, vol. 3, pp. 2179, 2180.]

Proceedings for the probate of the last will of Elizabeth S. McElwaine, deceased. Probate granted.

William L. Perkins, of New York City, for proponents.
Rollins & Rollins, of New York City, for Horace Mann School.
William E. Milne, of New York City, for contestant.

FOWLER, S. The preliminary question concerns the domicile of the alleged testatrix. If her last domicile was in this county, her will is entitled to probate before me. If her last domicile was in the state of California, the surrogate has no jurisdiction of this proceeding.

The legal notion of domicile was originally taken from the civil law. Code, lib. X, tit. 39, 7. "Ubi quis larem rerumque ac fortunarum suarum summam constituit; unde rursus non sit discessurus, si nihil avocet, unde cum profectus est peregrinari videtur, quo si rediit, peregrinari jam destitit." This definition is said to be the root of all subsequent notions of domicile, entertained by the jurisprudents of various countries. Cf. Story, Conflict of Laws, § 41; Bentwich, Dom. & Success., passim.

[2] The common law, however, contains an independent conception, "domicile of origin," which is now defined as the primary domicile of every person subject to the common law. In Bell v. Kennedy, L. R. (1 Sc. App.) 320, it was pointed out with emphasis that domicile and residence are perfectly distinct things. Our own courts are equally clear on this distinction. Matter of Newcomb, 192 N. Y. 238, 84 N. E. 950. In the case of married women the domicile of the husband is usually the domicile of the wife, and this even if she is living apart from him. Dalhousie v.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

McDouall, 7 C. & F. 817; Whitcomb v. Whitcomb, 2 Curt. 351; Matter of Daly's Settlement, 25 Beav. 456; Jones v. Jones, 8 Misc. Rep. 660, 30 N. Y. Supp. 177; Matter of Majot, 199 N. Y. 29, 92 N. E. 402. If a married woman is judicially separated from her husband, or there are other exceptional circumstances, such as his abandonment of her, she may sometimes acquire an independent domicile. But there is nothing of this kind in this case now before me. Mrs. McElwaine occasionally lived apart from her husband for long periods, but at no time was there a judicial separation, nor did the husband ever "abandon" her. Her domicile of origin was New York, and her husband's domicile was also at New York. Two leading factors thus concur in this matter (the domicile of origin and the matrimonial domicile) and they are of weight with me in arriving at my conclusion.

By the common law every person sui juris is at liberty to change his or her domicile and acquire a new one, called a "domicile of choice." Matter of Newcomb, 192 N. Y. 238, 250, 84 N. E. 950. In this matter it is asserted by contestant that Mrs. McElwaine duly exercised this right, if it appertained to her status, and that she established her independent domicile in California during her husband's life. Certainly, when she went to California temporarily, on business of her brother's estate, her husband was alive in New York, where were both his domicile and her domicile of origin. Even if Mrs. McElwaine was then, or subsequently, free or in a position to choose an independent domicile for herself, or entitled so to do in law, it seems to me that the proofs in this matter do not make out that in fact her domicile of origin was ever effectually changed by her own acts. Her declarations, which are competent on this point (Matter of Newcomb, 192 N. Y. 238, 84 N. E. 950), show an absence on her part of animus manendi in California. Her animus manendi in California is essential to establish her domicile of choice in California and to make out the alleged change of her domicile of origin. But there is an absence of proof of her animus manendi in California. This is fatal to the contention of contestant that Mrs. McElwaine ever established a domicile of choice in California.

It is incumbent on those who assert a change of domicile or a "domicile of choice" on the part of Mrs. McElwaine, to make it out by competent and sufficient evidence; otherwise her domicile of origin or her matrimonial domicile (which happened here to coincide) must prevail. Dupuy v. Wurtz, 53 N. Y. 556; Matter of Newcomb, 192 N. Y. 238, 84 N. E. 950.

[1] There is no doubt some conflict in the evidence submitted to me in this proceeding. Some facts point one way, but more another. On the trial I ventured to remark to counsel as follows:

"In the case of a woman, very little importance is attached to domicile, except a domicile of intention and a domicile of choice. Mrs. McElwaine's actual or de facto domicile during her later years seems to have been pretty much where her trunk was; yet her domicile of origin and her matrimonial domicile were here. Now, the domicile of intention, as far as this evidence shows, was also here. She was for a time in California, Los Angeles, and

she stated, in her petition for letters of administration in California on the estate of her brother, that she was a resident of California, and she then was. She probably had not a very clear conception of what 'residence' meant in law. She was there, and was residing there, and meant to stay there until she wound up the estate. I do not believe that there is any doubt about that."

But that is not enough. All the later declarations and actions of Mrs. McElwaine point to New York as her true or legal domicile, and they are unfavorable to a change of her domicile of origin.

It seems to me that under all the circumstances of this case I must conclude from the evidence that the domicile of Mrs. McElwaine, at the time of her death, was her domicile of origin, and in the state and county of New York.

Decreed accordingly.