## BLUMENTHAL v. COMMISSIONER OF INTERNAL REVENUE.
### Nos. 449, 450.

Circuit Court of Appeals, Second Circuit.
July 18, 1932.

Eugene Blumenthal and Ira S. Robbins, both of New York City (Walter H. Liebman and Eugene Blumenthal, both of New York City, of counsel), for petitioner-appellant.

G. A. Youngquist, Asst. Atty. Gen., and Sewall Key and A. H. Conner, Sp. Assts. to Atty. Gen. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Prew Savoy, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for respondent-appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The taxpayer and his wife were married in 1903 in the Province of Alsace-Lorraine, then a part of the German Empire. Immediately prior to the marriage they entered into an antenuptial agreement containing the following provisions:

"Property acquired during the period of the marriage shall be conclusively considered as jointly held.

"There remains, therefore, to each spouse as his or her respective contributed fortune, whatever belonged to such party at the time of the marriage, and further whatever such party may after the marriage contract acquire through inheritance, legacy, gift or otherwise, based upon individual title, including also any future legacy. The community property of the parties to the marriage is only what the contracting parties to this marriage may acquire in any way during the period of their married life, whether as earnings or through good fortune, including also any income from their community property or from the contributed fortune. Any debts that have been brought in remain the obligation of that one of the contracting parties from whom they originated."

At the time of the making of the marriage contract, the community property system as between husband and wife prevailed as the law of Alsace-Lorraine, but it never existed in New York where they resided during the years 1925 and 1926.

The Commissioner of Internal Revenue determined that the whole of the taxpayer's earnings in New York during 1925 and 1926 was taxable to him, while he, on the other hand, insisted that but half of it was taxable to him and the other half to his wife. The Board of Tax Appeals affirmed the determination of the Commissioner, and, from its orders adjudging that there were deficiencies upon the petitioner's income tax for the years 1925 and 1926, this appeal was taken.

The question presented is whether an antenuptial agreement, made in Alsace-Lorraine, which provided that the earnings of either spouse should constitute community property, vested in the wife such an interest in the earnings of the husband in New York as to make only one-half thereof taxable to the husband.

Section 213 of the Revenue Act of 1924, as well as section 213 of the Revenue Act of 1926, 26 USCA § 954 (a), provides that: "(a) The term 'gross income' includes gains, profits, and income derived from salaries, wages, or compensation for personal service * * * of whatever kind and in whatever form paid. * * * The amount of all such items shall be included in the gross income for the taxable year in which received by the taxpayer. * * *"

If, when the husband derived income from his salary in 1925 and 1926 no marriage contract had been made but New York had had a system of community property like that of Alsace-Lorraine, the wife would have become the owner of one half of the husband's salary as fast as it accrued, and he would have only been obliged to include the other half in his gross income when computing his income tax. Poe v. Seaborn, 282 U. S. 101, 51 S. Ct. 58, 75 L. Ed. 239; Goodell v. Koch, 282 U. S. 118, 51 S. Ct. 62, 75 L. Ed. 247; Hopkins v. Bacon, 282 U. S. 122, 51 S. Ct. 62, 75 L. Ed. 249; Bender v. Pfaff, 282 U. S. 127, 51 S. Ct. 64, 75 L. Ed. 252.

In Lucas v. Earl, 281 U. S. 111, 50 S. Ct. 241, 74 L. Ed. 731, and Burnet v. Leininger, 284 U. S. 608, 52 S. Ct. 43, 76 L. Ed. —— it was held that antenuptial contracts providing that all subsequent earnings of the parties should be owned by them as joint tenants amounted to no more than an assignment of future income and did not relieve the husband from paying a tax upon net income comprising his entire earnings. In Lucas v. Earl, 281 U. S. at page 114, 50 S. Ct. 241, 74 L. Ed. 731, Justice Holmes said: "There is no doubt that the statute could tax salaries to those who earned them and provide that the tax could not be escaped by anticipatory arrangements and contracts however skilfully devised to prevent the salary when paid from vesting even for a second in the man who earned it. That seems to us the import of the statute before us and we think that no distinction can be taken according to the motives leading to the arrangement by which the fruits are attributed to a different tree from that on which they grew."

In Lucas v. Earl, the matrimonial domicile was in California, where at that time the statutes gave the wife no vested interest in the husband's earnings. The marriage contract, providing that subsequent earnings of the spouses should be owned jointly, was held insufficient to give the wife such a vested interest as the earnings arose. In the case at bar the taxpayer entered into a marriage contract in terms like the one in Lucas v. Earl, supra, but in a place (Alsace-Lorraine) where the community system of law affecting married people gave a wife a vested interest in one-half of her husband's earnings from the moment that they accrued. The community system of law prevailing at the matrimonial domicile would have no extraterritorial effect and the rights of the wife in her husband's income would be determined by the law of the subsequent domicile where it was earned. In re Majot's Estate, 199 N. Y. 29, 92 N. E. 402, 29 L. R. A. (N. S.) 780; Muus v. Muus, 29 Minn. 115, 12 N. W. 343; In the Matter of the Estate of Jean Baptiste Baubichon, 49 Cal. 18; Decouche v. Savetier, 3 Johns. Ch. 190, 8 Am. Dec. 478. Strive as they might, the parties to the contract could do no more than *attempt* to create by agreement a counterpart of the system of property rights that existed in Alsace-Lorraine in the absence of any agreement. They sought to accomplish their purpose in the same way the parties did in Lucas v. Earl, and must meet the same obstacles to success.

While the antenuptial contract made in Alsace-Lorraine would be recognized in New York (In re Majot's Estate, 199 N. Y. 29, 92 N. E. 402, 29 L. R. A. (N. S.) 780; Decouche v. Savetier, 3 Johns. Ch. 190, 8 Am. Dec. 478), it would become effective as an assignment of future earnings and not as a transfer "ex proprio vigore" to the wife of the legal title to one-half of her husband's earnings, from the moment that they arose. It seems entirely unlikely that the New York courts would give parties to a contract made in a foreign country rights greater than they would have given to their own citizens had a contract of similar import been made in New York originally and had they sought to enforce it there.

The beneficial rights of the wife were equitable, and such rights the Supreme Court has distinctly held insufficient to limit the husband's responsibility for reporting and paying an income tax upon his full earnings. Their decision precludes us from giving him any greater rights here.

The orders of the Board of Tax Appeals are affirmed.