Otto C. Jaeger, S.
In an executrix’ accounting proceeding the decedent’s daughter by his first marriage moves for partial summary judgment as to one of the issues raised by her objections. The motion presents the question of whether the widow of a New York decedent acquired community property rights during his lifetime in his Louisiana personal property by virtue of a Louisiana statute applicable by its terms to nondomiciliaries when New York was the State of marital domicile and no such rights existed under its laws.
The testator died on November 15, 1962, a resident of this county. His will, dated November 13, 1953, was admitted to probate by this court on February 11, 1963, and letters testamentary were issued to Margaret S. Hemingway, also a New York resident, who had been his secretary. The testator was survived by his second wife, Martha Bailey Crichton, a resident of Bermuda, from whom he had been separated since about 1935, by two children of his first marriage, and two children of his second marriage. The widow was omitted from the will and makes no claim to any rights under New York law to take against the will by intestacy (Decedent Estate Law, § 18).
The account reflects an estate of approximately $360,000 in personal property, the bulk of which was in Louisiana, and real property in that State. Ancillary proceedings were instituted in Louisiana, and ancillary letters testamentary were issued on April 28, 1964 to Margaret S. Hemingway. Subsequently, on June 3,1965 the ancillary executrix initiated there a proceeding described as one for approval of her inventory and for the computation of the Louisiana inheritance taxes. The widow asserted therein a claim to community property rights in the personal property there inventoried, which is being resisted by the son and daughter of the testator’s first marriage. That son and daughter preliminarily excepted to the jurisdiction of the Louisiana court to determine the ownership of personal prop *407 erty of a New York decedent, but the exception to jurisdiction was overruled and the ancillary executrix was permanently restrained from disposing of or removing from the State of Louisiana any of the personal property belonging to the widow by an order of the Twenty-Sixth Judicial District Court, Webster Parish, Louisiana, dated January 4, 1966. As yet, no determination on the merits has been made by that court.
On July 2, 1965 Gloria C. McGehee, the daughter of the first marriage, filed a petition in this court to compel the executrix to account. In response thereto the executrix filed an intermediate account on September 20, 1965. Schedule “ D-l ” thereof sets forth as unpaid the widow’s claim of her share of community property in the sum of $156,000. On December 2, 1965 Mrs. McGehee filed objections to the account, which include an objection to an allowance of this claim on the ground that (1) Louisiana’s community property laws are inapplicable; (2) under Louisiana law the claim is invalid; and (3) the widow has no rights except to take against the will by intestacy, a right which, as noted above, she has not asserted.
The widow thereupon filed an objection to the inclusion in Schedule “A” of the account filed herein, of the items being accounted for in Louisiana on the grounds that (1) they are held by Margaret S. Hemingway solely as ancillary executrix in Louisiana and have not come into her hands as domiciliary executrix, and (2) the Louisiana court has enjoined the ancillary executrix from removing or disposing of those items.
The instant matter before this court is a motion by Mrs. McGehee (1) for partial summary judgment (CPLR 3212, subd. [e]), in connection with her objection set forth above, disallowing the widow’s claim to community property rights; or (2) in the alternative, for an order directing that such issue be severed and set down for trial; and (3) (a) to enjoin the widow from pressing her claim in any court except this court, and (b) to enjoin the executrix from abetting the widow in pressing said claim in any other jurisdiction.
The entire basis of the widow’s claim is article 2400 of the Louisiana Civil Code, which provides: “Art. 2400. Property acquired in State by non-resident married persons, whether the title thereto be in the name of either the husband or wife, or in their joint names, shall be subject to the same provisions of law which regulate the community of acquets and gains between citizens of this State.”
The movant urges that since the widow was omitted from the will, her interest in this estate is limited to the statutory right of election (Decedent Estate Law, § 18), which she has not *408 asserted. It is clear, however, that the widow’s position is akin to that of a petitioner in a proceeding to recover specific personal property alleged to be in the possession or under the control of an executrix (Surrogate’s Ct. Act, § 206-a). She is not claiming an interest in a decedent’s estate. Instead she claims that the executrix withholds funds, to which the widow acquired title during the testator’s lifetime by reason of the Louisiana statutes and that such funds are not assets of this estate. Therefore, the question before the court is as to the ownership of movables owned by the decedent husband at the time of marriage or acquired during the marriage and is not as to any rights the widow may have in the descent and distribution of assets owned by a decedent at the time of his death.
The Eestatement of the Law, Conflict of Laws (1934), provides:
‘£ § 289. Effect of marriage on title to existing movables. At marriage the husband and wife respectively acquire such rights or other interests in movables then belonging to the other as are given by the law of the domicil of the husband at the time of the marriage.
* * *
“ § 290. Movables acquired during marriage. Interests of one spouse in movables acquired by the other during the marriage are determined by the law of the domicil of the parties when the movables are acquired.
“ Comment:
* * *
“ c. When spouses have .separate domiciles. If the spouses have separate domiciles at the time of the acquisition of movables, the law of the domicil of that spouse who acquires the movables determines the extent of the interest of the other spouse therein.
* * *
“ § 293. Movables held separately taken into another state. Interests in movables held .separately by either spouse remain separate interests although the movables are taken into a state which creates community interests therein.”
These rules, that the law of the State of the matrimonial domicile, or, in the case of separate domiciles, that the law of the State of the domicile of the spouse who acquires the movables, and not the law of the State or States where the assets may be physically present, controls as to the ownership of husband and wife of personal property, were approved in his *409 treatise by an eminent commentator in this field (2 Beale, Conflict of Laws [1935], §§ 289.1-293.2). These choice of law rules rest upon the principle that movables have no situs, or rather that they accompany the person everywhere (Harding, Matrimonial Domicil and Marital Rights in Movables, 30 Mich. L. Rev. 859, 867-868 [1932], citing Story, Conflict of Laws [8th ed., 1883], § 186). However, some would only apply these rules to movables owned at the time of marriage and intangible movables acquired after marriage, but not to tangible movables acquired after marriage (e.g., Harding, Matrimonial Domicil and Marital Rights in Movables, supra, pp. 867-872, 877). The assets in controversy are intangibles, consisting of stocks, bonds and bank accounts, located in Louisiana for the purposes of investment.
That the law of the State of the matrimonial domicile governs as to ownership of husband and wife of personal property is the law of the State of New York (Matter of Majot, 199 N. Y. 29, 32-34; Matter of Hernandez, 172 App. Div. 467, 477, affd. 219 N. Y. 566; Bonati v. Welsch, 24 N. Y. 157, 162-163; Hutchison v. Ross, 262 N. Y. 381, 396, 399-400, mot. for rearg. den. 262 N. Y. 643; Hendricks v. Isaacs, 46 Hun 239, 242-243; Matter of James, 172 App. Div. 800, 802, mot. for rearg. den. 174 App. Div. 936, revd. on other grounds 221 N. Y. 242, mot. for rearg. and amdt. of remittitur den. 221 N. Y. 636; Chesny v. Chesny, 278 App. Div. 586, mot. for rearg. and lv. to app. den. 278 App. Div. 697), although the law of the State of the matrimonial domicile has not been followed in determining rights under contracts made elsewhere or the validity of inter vivos trusts with a situs elsewhere (e.g., Graham v. First Nat. Bank of Norfolk, 84 N. Y. 393, 399-400; Hutchison v. Ross, supra, pp. 391, 394-397; Wyatt v. Fulrath, 16 N Y 2d 169).
The matrimonial domicile has been defined as the domicile of the husband, from the moment of the marriage until the matrimonial unit be dissolved (Harding, Matrimonial Domicil and Marital Rights in Movables, supra, p. 865, citing Goodrich, Conflict of Laws [1927 ed.], §§ 29, 119).
None of the parties to this controversy is a Louisiana resident, nor was the decedent. The asserted basis for applying Louisiana law is that the intangible personal property was physically present there, but this is outweighed by the dominant interest of this State in the marital rights of the parties (Auten v. Auten, 308 N. Y. 155, 162). New York is the State of the marital domicile, the State of the domicile of the spouse first acquiring this property, and the State of the most significant contacts with the matter in dispute. Were the court to apply *410 other than domiciliary law with regard to personal property, fiduciaries would be confronted with the application of as many different laws as there were States in which the principal owned personal property.
Courts outside the State of Louisiana have refused to be bound by the Louisiana statute when it conflicted with their own laws. In Tirado v. Tirado (357 S. W. 2d 468 [Tex. Ct. Civ. App., April 24, 1962, rehearing den. May 15, 1962]), a divorce action brought by the plaintiff wife against her second husband in Texas, the State of the marital domicile, the defendant husband claimed that a working interest owned by the wife in and to certain oil and gas leases situated in Louisiana was community property by reason of article 2400 of the Louisiana Civil Code. Said interests had been inherited by the plaintiff wife from her first husband. During her second marriage the production of oil and gas from Louisiana was sold and the proceeds were deposited in a Texas bank, as were the proceeds of oil and gas sold from lands in Texas. The defendant argued he was entitled to one half of all such funds because of the commingling. The wife urged that the Louisiana property was her separate property on the date of her second marriage and continued to be held in her name, that the sale of the Louisiana oil and gas was a sale of movable personal property, and that the cash received from the sale by her as a married woman domiciled in Texas was her separate property.
The court held (1) Texas was the State of marital domicile; (2) oil and gas under both Louisiana and Texas law became personal property upon its production and severance; (3) the law of the State of the domicile of the parties determined the ownership of the proceeds of the sale; (4) the Louisiana community property statutes had no extraterritorial effect; (5) the Louisiana statutes and decisions were contrary to the laws and public policy of Texas, and the Texas courts will refuse to go against Texas law and will enforce Texas law as a matter of public policy; (6) under Texas conflict of laws rules the Louisiana personal movable property and income therefrom would fall as separate or community property depending on the local law of Texas, the State of marital domicile; and (7) that under Texas local law, the wife having shown the assets acquired after the second marriage were acquired from her separate property, the burden was on the defendant husband to show otherwise, which he failed to do. The contentions of the plaintiff wife were sustained.
In the instant case the basis of the objection of the testator’s daughter, the movant, is that the intangible personal property *411 involved was, or was acquired from, the separate property of the testator, and not from any funds constituting the separate property of the widow. No issue as to this is raised by the widow’s opposing papers. Her contention is that this property became community property solely by reason of Louisiana’s community property laws. She raises no triable issue of fact, but relies on Louisiana law and submits that this question should be decided by the Louisiana court in the ancillary proceedings there.
For the reasons hereinabove set forth, the court holds that Louisiana law has no application, and that the widow acquired no community property rights in the personal property of this decedent. The question is properly before this court as the court of domicile (Surrogate’s Ct. Act, § 40).
Further support for this result is found in Kraemer v. Kraemer (52 Cal. 302, 305); Matter of Burrows (136 Cal. 113); Matter of Warner (167 Cal. 686, 691); Matter of Frees (187 Cal. 150, 154); Matter of Thornton (19 P. 2d 778, 783, 784 [Cal. Sup. Ct., 1933] superseded upon rehearing 1 Cal. 2d 1). In the latter case, on rehearing, amendments to a California statute, which thereafter purported to apply California’s community property laws to property acquired elsewhere by nondomiciliaries who became California domiciliaries subsequent to the passage of the amendments, were held unconstitutional. A California statute, passed subsequent to the second decision in Thornton, purporting to divest a decedent domiciliary of property acquired elsewhere while a nondomieiliary, and to subject it to community property rights, was held unconstitutional in Paley v. Bank of America Nat. Trust & Sav. Assn. (159 Cal. App. 2d 500 [2d List. Ct. App. Div. 1, 1958]). A still later California statute applying quasi-community property rights to personal property acquired elsewhere by nondomiciliaries who subsequently became California domiciliaries, but only as part of State power to control distribution of property in connection with actions for divorce or separate maintenance, was held valid in Addison v. Addison (62 Cal. 2d 558). It should be noted, however, that the Louisiana statute goes further than the several California statutes — by seeking to control personal property of persons who at no time became Louisiana domiciliaries. The rationale of the California cases and statutes was always a control of property rights of its own domiciliaries.
Other cases in which the forum State refused to give community property rights to its domiciliaries as to property acquired before they became domiciliaries include Oliver v. Robertson (41 Tex. 422, 425); Blethen v. Bonner (30 Tex. Civ. *412 App. 585 [1902, rehearing den. 1903, writ of error den. by Tex. Sup. Ct., 1903]) and Douglas v. Douglas (22 Idaho 336).
Decisions in which noncommnnity property States applied the community property laws of other States to property acquired by residents of the forum State while domiciled in the community property State include People v. Bejarano (145 Col. 304); Commonwealth v. Terjen (197 Va. 596) and Matter of Kessler (177 Ohio St. 136 [Ohio Sup. Ct., 1964]).
A situation closely parallel to the instant case was presented in Brookman v. Durhee (46 Wash. 578), where the Supreme Court of the State of Washington held that a Washington statute could not validly give community property rights to a wife in her husband’s property in Washington when both were domiciliaries of New York.
Article 2400 of the Louisiana Civil Code has no application to the movables accounted for herein. Since under domiciliary law Powell Crichton’s personal property followed his person and had a New York situs, it was not property acquired within Louisiana within the meaning of that statute. This court will give no effect to, and will not be bound by, Louisiana’s attempt to apply its community property laws to the personal property of persons not domiciled in that State (Brookman v. Durkee, supra; Tirado v. Tirado, supra; Restatement, Conflict of Laws, §§ 289, 290, 293, supra).
The motion by Mrs. McGehee, the testator’s daughter of his first marriage, for partial summary judgment is granted. Her first objection to the account of the executrix is sustained. The objections of Martha Bailey Crichton, the widow, are dismissed.
On this motion Mrs. McGehee also requests that the widow be enjoined from pressing her claim in the Louisiana courts and that the executrix, be enjoined from abetting her in this. While this court has in personam jurisdiction over all the parties, and has “ power to restrain those within the jurisdiction from doing anything that is contrary to equity and good conscience to the injury and damage of others, even though the threatened inequitable conduct consists of the prosecution of an action in a foreign jurisdiction” (Paramount Pictures v. Blumenthal, 256 App. Div. 756, 758-759, app. dsmd. 281 N. Y. 682), triable issues of fact exist as to whether the foreign suit was brought to evade domiciliary law, or in an attempt to evade the public policy of this State. The request for injunctive relief is denied.