232 So.2d 109 (1970)
Mrs. Martha Bailey CRICHTON, Plaintiff-Appellant,
v.
SUCCESSION of Powell CRICHTON (Miss Margaret S. Hemingway, Ancillary Testamentary Executrix), Defendants-Appellees.
No. 11316.
Court of Appeal of Louisiana, Second Circuit.
January 6, 1970.
Rehearing Denied March 3, 1970.
*110 Theus, Grisham, Davis, Leigh & Brown, by John C. Theus and Robert L. Curry, Monroe, for Mrs. Martha Bailey Crichton.
Hayes, Harkey & Smith, by Thos. M. Hayes, Jr., Monroe, for Miss Margaret S. Hemingway.
Blanchard, Walker, O'Quin & Roberts, by Robert Roberts, III and Joseph W. Milner, Shreveport, for Gloria Crichton McGehee.
Lunn, Irion, Switzer, Johnson & Salley, by Harry A. Johnson, Shreveport, for Powell Crichton, Jr.
Henry G. Hobbs, Minden, for Kate Crichton and Edward Bailey Crichton.
Before AYERS, DIXON and WILLIAMS, JJ.
WILLIAMS, Judge.
Powell Crichton died in New York on November 15, 1962 at the age of 78. He was born in Louisiana but left the state when he was very young. He practiced law in New York for many years and resided in Westchester County. In 1916 Powell Crichton married for the first time of which marriage two children, Powell Crichton, Jr. and Mrs. Gloria Crichton McGehee were born. The first Mrs. Crichton died in Westchester County, New York in 1923. In 1925 Mr. Crichton married a second time to Martha Bailey Crichton, the plaintiff-appellant. Two children were born of this marriage. In 1935 the couple separated, Mrs. Crichton thereafter living in the British Colony, Bermuda, although the couple was never divorced. At his death Mr. Crichton was survived by his four children and his widow. According to the terms of his will, dated November 13, 1953, the entire estate passed in trust to his surviving children. No provision was made for his surviving wife. The bulk of his estate consisted of bank accounts, stocks, bonds and an interest in a partnership, all in Louisiana. He also left some real property located in Louisiana. The intangible movable property is the subject of this litigation.
Miss Margaret S. Hemingway, Mr. Crichton's secretary, was named Executrix in his will. Succession proceedings were opened in the state of New York where the will was admitted to probate on January 30, 1963, and Miss Hemingway qualified as Testamentary Executrix. On August 20, 1963 ancillary succession proceedings were opened in Louisiana and Miss Hemingway qualified as Ancillary Executrix. She filed an inventory purporting to describe and value the Louisiana properties and sought approval of the inventory. The personal property involved here was listed in the inventory as belonging to the second community and was valued at a total of $306,281.50. The widow asserted a claim to an undivided one-half interest in the personal property left by decedent and sought an order to show cause why her community interest should not be recognized. She further sought to enjoin the Executrix from removing any of the property from Louisiana during the pendency of the proceedings. The son and daughter of the first marriage excepted to the jurisdiction of the Louisiana court to determine the ownership of the personal property. On January 4, 1966 the District Court overruled the exceptions. The Executrix was permanently enjoined from transferring the assets out of Louisiana.
On September 20, 1965 the Executrix filed an account in New York in which the widow's share of community property was listed as unpaid. Mrs. McGehee, the *111 daughter of the first marriage, objected to the account primarily on the ground of inapplicability of Louisiana community property law. Mrs. Crichton objected to the account on the basis that the properties were held by Miss Hemingway solely as Ancillary Testamentary Executrix in Louisiana and could not be removed or disposed of because of the Louisiana injunction. Mrs. Crichton made no effort to assert any rights in Mr. Crichton's estate under New York law. The entire basis of her claim is based on LSA-C.C. Art. 2400.[1] Mrs. McGehee filed a motion for summary judgment. In a contradictory proceeding the Surrogate Court of Westchester County held that Louisiana's community property laws were not applicable and sustained the objection to the widow's claim. The court recognized that it had jurisdiction over the subject matter and jurisdiction over the person of all parties. In re Crichton's Will, 49 Misc.2d 405, 267 N.Y.S.2d 706 (1966).
The children of the first marriage sought recognition in the Louisiana Court of the judgment of the Surrogate Court under the Full Faith and Credit clause by means of a motion for partial summary judgment. This motion was denied by the district court. From this ruling application for supervisory writs were made to this court and the Louisiana Supreme Court. The applications were denied on the ground that an adequate remedy could later be had on appeal.
The Executrix and widow appealed the Surrogate's decision to the Supreme Court, Appellate Division (Second Department) of the State of New York which unanimously affirmed the Surrogate decision rejecting the widow's claim. In the Matter of the Will of Powell Crichton, Deceased, 26 A.D. 2d 639, 272 N.Y.S.2d 987 (1966). Before the case was decided the widow's appeal was dismissed for failure to prosecute. The Executrix appealed to the New York Court of Appeals, the highest court of that state, which in an opinion by the Honorable Keating, J., unanimously affirmed the decision of the Surrogate Court. In re Estate of Crichton, 20 N.Y.2d 124, 281 N.Y.S.2d 811, 228 N.E.2d 799 (1967). That court held that New York law should be applied, relying primarily on the legal fiction that movables follow the person "mobilia sequuntur personam".
The instant case was thereafter tried in Louisiana. The trial court held that the final judgment of the New York Court of Appeals was entitled to full faith and credit. The previous ruling overruling an exception of res judicata was recalled and the exception was then sustained. In his oral opinion the judge below went on to say that if he were considering the matter on its merits he would have likewise chosen to apply the law of New York. The court further ordered the dissolution of the injunction previously issued. The widow has appealed suspensively from this judgment.
Article IV, Section 1 of the United States Constitution provides:
"Full Faith and Credit shall be given in each State to the Public Acts, Records and judicial Proceedings of every other State. * * *"
This mandate was supplemented by the Act of Congress, 28 U.S.C.A. § 1738.[2]
*112 The federal jurisprudence has uniformly placed a judgment on a different level than a statute of another state. The United States Supreme Court reviewed the subject in Magnolia Petroleum Company v. Hunt, 320 U.S. 430, 64 S.Ct. 208, 88 L.Ed. 149 (1944). The Court therein reversed the Court of Appeal, State of Louisiana, 1st Circuit, which affirmed the judgment of the District Court of Calcasieu Parish, granting supplemental relief under Louisiana Workmen's Compensation law to an injured workman who had already received disability payments under Texas Workmen's Compensation law.[3] The Court made the following observations:
"* * * in thus refusing, on the basis of state law and policy, to give effect to the Texas award as a final adjudication of respondent's claim for compensation for his injury suffered in Texas, the Louisiana court ignored the distinction, long recognized and applied by this Court, and recently emphasized in Williams v. North Carolina, supra (317 U.S. 287, 294, 296, 63 S.Ct. 207, 87 L.Ed. 279, 283, 284, 143 A.L.R. 1273), between the faith and credit required to be given to judgments and that to which the local common and statutory law is entitled under the Constitution and laws of the United States."
* * * * * *
"The full faith and credit clause and the Act of Congress implementing it have, for most purposes, placed a judgment on a different footing from a statute of one state, judicial recognition of which is sought in another. * * *"
"From the beginning this Court has held that these provisions have made that which has been adjudicated in one state res judicata to the same extent in every other. * * *
"* * * Even though we assume for present purposes that the command of the Constitution and the statute is not all-embracing, and that there may be exceptional cases in which the judgment of one state may not override the laws and policy of another, this Court is the final arbiter of the extent of the exceptions. * * * And we pointed out in Williams v. North Carolina, supra (317 U.S. 294, 295, 63 S.Ct. 207, 87 L.Ed. 283, 284, 143 A.L.R. 1273), that `the actual exceptions have been few and far between * * *.'
* * * * * *
"These consequences flow from the clear purpose of the full faith and credit clause to establish throughout the federal system the salutary principle of the common law that a litigation once pursued to judgment shall be as conclusive of the rights of the parties in every other court as in that where the judgment was rendered, so that a cause of action merged in a judgment in one state is likewise merged in every other. The full faith and credit clause like the commerce clause thus became a nationally unifying force. It altered the status of the several states as independent foreign sovereignties, each free to ignore rights and obligations created under the laws or established by the judicial proceedings of the others, by making each an integral part of a single nation, in which rights judicially established in any part are given nationwide application. * * * Because there is a full faith and credit clause a defendant may not a second time challenge the *113 validity of the plaintiff's right which has ripened into a judgment and a plaintiff may not for his single cause of action secure a second or a greater recovery." [320 U.S. 436-440, 64 S.Ct. 212-213, 88 L.Ed. 153-156]
The Supreme Court has further elucidated the rule that full faith and credit must be given to a foreign judgment even as to findings of jurisdiction when that question has been litigated in the court rendering the original judgment.[4]
The Court succinctly stated the rule of res judicata as follows:
"One trial of an issue is enough. `The principles of res judicata apply to questions of jurisdiction as well as to other issues,' as well to jurisdiction of the subject matter as of the parties." [Treinies v. Sunshine Mining Co., 308 U.S. 66, 78, 60 S.Ct. 44, 51, 84 L.Ed. 85, 93 (1939)].
Error in the proceeding of the other court is not a defense to enforcement of a judgment.[5]
The Louisiana Courts have recognized the requirement of full faith and credit. Biri v. Biri, 192 So.2d 862 (La. App. 4th Cir. 1966) the court gave full faith and credit to a Texas divorce decree where both parties were domiciled in Texas when the divorce proceedings were instituted *114 as found by the Texas court. The court recognized that Louisiana could concern itself only with the question of domicile and jurisdiction over the parties and the issues in a suit for recognition of a foreign judgment. In Mente & Company v. Anciens Etablissements Verdier-Dufour & Cie., 177 La. 829, 149 So. 492 (1933), the Louisiana Supreme Court remanded a case to the trial court for the purpose of receiving proper evidence of the New York proceedings. The Court stated further:
"For, when two suits involving the same issues between the same parties are brought before two separate courts each clothed with jurisdiction thereof, and both suits are allowed to proceed pari passu, the first judgment rendered in either of said courts is the judgment between the parties, and the suit in the other court immediately abates and must be dismissed. Code Prac. art. 94, as amended by Act No. 62 of 1918."[6]
The requirements for sustaining a plea of res judicata are set forth as follows in Article 2286 of the Louisiana Civil Code:
"The authority of the thing adjudged takes place only with respect to what was the object of the judgment. The thing demanded must be the same; the demand must be founded on the same cause of action; the demand must be between the same parties, and formed by them against each other in the same quality."
The record unquestionably demonstrates that these requirements have been fully met. The issue of the widow's rights has been fully litigated in the New York proceedings. On the basis of the Full Faith and Credit Clause and the interpretation of that clause by the Supreme Court of the United States, we hold that we are bound to accord full faith and credit to the judgment of the Court of Appeals of the State of New York as a final decision between the parties regardless of whether or not the courts of Louisiana would have reached the same result.
The Full Faith and Credit Clause, however, does not require that we agree with another court's interpretation of one of our statutes. The interpretation placed upon Article 2400 is incorrect and the conclusion reached is repugnant to our law.
Article 2400 of the Louisiana Civil Code reads as follows:
"All property acquired in this State by non-resident married persons, whether the title thereto be in the name of either the husband or wife, or in their joint names, shall be subject to the same provisions of law which regulate the community of acquets and gains between citizens of this State." [LSA-C.C. Art. 2400]
The New York Court of Appeals resolved the choice of law problem by examining the respective contacts which Louisiana and New York have to the controversy. The court posed the issue as follows:
"The issue in this case is whether the community property laws of Louisiana should be applied to govern the property rights of New York domiciliaries in intangible personal property acquired during coverture. From the previous discussion, it is clear that the community property system is designed to regulate the property rights of married persons and, in particular, to protect the interest of each spouse in the property accumulated during marriage. * * * For reasons which become obvious merely in stating the purpose of the rule, Louisiana has no such interest in protecting and regulating the rights of married persons residing and domiciled in New York." [20 N.Y.2d 124, 134, 281 N.Y.S.2d 811, 820, 228 N.E.2d 799, 808]
*115 The court then made the following statements:
"It is urged by the appellant that the Louisiana contacts with this case give it the paramount interest in the application of its law. Among the contacts which are urged as being significant are the facts the deceased was born in Louisiana, that, although he was domiciled in New York, the bulk of his fortune was made in Louisiana, and that the documentary evidences of his intangible property are located in that jurisdiction. Exactly how these contacts are related to the policies sought to be vindicated by Louisiana's community property laws is not made clear. The reason, no doubt, is that they have no relation whatever." [Ibid, p. 134-135, 281 N.Y.S.2d p. 820, 228 N.E.2d p. 808]
The court concluded that New York law must be applied. The court then discussed whether Louisiana Courts would apply Louisiana or New York law. The reasons and conclusions are lengthy but deserve repeating here:
"An examination of the context in which article 2400 was enacted would appear to indicate that it was intended to apply to property purchased by nonresidents who, subsequent to the acquisition of the property, become residents of Louisiana. In two cases decided by the Louisiana Supreme Court shortly before the enactment of article 2400, it was held that the real property of such persons located in Louisiana was not subject to the community property laws of Louisiana but rather to the laws of the State where the owners were domiciled at the time the property was acquired. (Huff v. Borland, 6 La.Ann. 436; Wolfe v. Gilmer, 7 La.Ann. 583). Louisiana does, of course, have a substantial interest in regulating the property rights of married persons domiciled in Louisiana, regardless of when the property was acquired, and it is, therefore, reasonable to assume that the effectuation of this governmental interest motivated the enactment of article 2400. * * * It might be noted that, although the Louisiana statutes subject to the community of `acquets and gains' all property held by persons married in Louisiana and all property acquired by persons married in other jurisdictions (art. 2399, supra) after they become residents of Louisiana (La.Code of 1870, art. 2401), no provision other than article 2400 is applicable to property acquired in Louisiana by nonresidents who later move to Louisiana." [20 N.Y.2d 124, 131, 132, 281 N. Y.S.2d 811, 817-818, 228 N.E.2d 799, 805-806]
The court then concluded:
"Up to this point we have not considered whether the Louisiana courts would, in fact, apply their own law to determine the widow's rights in the property in question. Although it would appear from the unequivocal wording of the statute that this would be the case, the previous discussion of the context in which article 2400 was enacted, as well as the pertinent Louisiana decisions in this area, leads to the conclusion that the Louisiana courts might well apply New York law. Perhaps the leading Louisiana case in this area is Williams v. Pope Mfg. Co., 52 La.Ann. 1417, 27 So. 851, 50 L.R.A. 816 [1900]. There the Supreme Court of Louisiana held that a cause of action for personal injuries suffered in Louisiana was an intangible property right which had its legal situs at the domicile of the married woman and could not be said to have been property acquired in Louisiana. Therefore, the plaintiff wife, a nonresident of Louisiana, was permitted to sue instead of her husband. * * *
"This case was distinguished in a later decision of the Louisiana Supreme Court. The court appeared to indicate that the basis of the decision was not that article 2400 was inapplicable but rather that it would not be applied where the domiciliary law was not inimical to the policy of the State of Louisiana. (Matney v. *116 Blue Ribbon, Inc., 202 La. 505, 12 So.2d 253 [1942].)
"The application of New York law to the facts in this case could hardly be said to be inimical to the policy of Louisiana. The protection afforded the wife under our law certainly makes adequate provision for her financial security. * * * Therefore, whether Williams or Matney are regarded as controlling, a rather strong argument can be made that the Louisiana courts, under these circumstances, would not apply article 2400." [20 N.Y.2d 135, 136, 281 N.Y. S.2d 821, 228 N.E.2d 809]
We cannot agree with the conclusion reached by the New York court. In the first place the court has refused to properly recognize Louisiana's right to establish its own conflict of laws rule. In clear unambiguous terms Article 2400 of the Louisiana Civil Code states the question of ownership of property located within this state is to be determined according to our laws. The right of the situs state to assert such a rule has been approved by commentators in the field of conflict of laws.[7]
The New York court also erroneously relied heavily on cases decided before the passage of Article 2400 which first became part of our law as a result of the passage of Act 292 of 1852. Huff v. Borland, supra; Wolfe v. Gilmer, supra.
The New York court also appears to have completely ignored the most complete interpretation of Article 2400 by the Louisiana courts to date. In Succession of Dill, 155 La. 47, 98 So. 752 (1924), the Louisiana Supreme Court sets forth the far reaching effects of LSA-C.C. art. 2400. In that decision the court stated:
"Now it is clear that a community exists in the following cases:
(1) Where the parties marry, and continue to live here.
(2) Where the parties marry here, and remove out of the state.
(3) Where the parties marry outside the state, and continue to reside outside thereof.

(4) Where the parties marry outside the state, and then remove here together.
"And all these communities have, as their basis, equality between the spouses; that is to say, property acquired in this state by either of them falls into the community." (Emphasis supplied).
* * * * * *
"We therefore conclude that the accepted interpretation of the act of 1852 (R.C.C. art. 2400) is the correct interpretation thereof, and that all property acquired in this state by married persons becomes community property regardless of where both or either of them reside (unless they have contracted otherwise). R.C.C. art. 2329; Act 236 of 1910, p. 400." (Emphasis supplied). [98 So. 752, 755]
In view of the clear language of Article 2400 and the preceding authorities we are convinced that Mrs. Crichton was entitled as a substantive right to a one-half interest in the movable property left by the deceased under Louisiana law.[8] However, as a consequence of the Full Faith and *117 Credit Clause of the Federal Constitution we are bound to hold that the judgment of the State of New York is entitled to res judicata effect in Louisiana.
For the reasons so stated, the judgment appealed from is affirmed. Costs of this appeal are assessed to appellant.
DIXON, Judge (concurring).
I concur in holding that the New York decree is entitled to recognition under the full faith and credit clause of the United States Constitution. All the requirements of res judicata under C.C. 2286 are satisfied.
However, with due respect to the majority, I cannot join in that portion of the opinion which concludes that the New York courts were in error. Having reached the conclusion that is decisive of the case, the court proceeds to contribute to that great body of obiter dicta which helps make the law the living, growing, confusing thing that it sometimes becomes.
If we ought to examine whether the application of C.C. 2400 would require a conclusion different from that reached by the New York courts, the examination should be complete. The appellees claim that, even if the property involved is community by operation of C.C. 2400, it was acquired with separate property of the decedent, whose separate estate is entitled to restitution.
There is also a question ignored about the application of C.C. 10 to the facts of the case before us. Since that article specifically requires that the effect of the decedent's will be governed by the laws of New York as to the disposition of his movables located in Louisiana, it seems that our own codal provisions might require the same conclusion as that reached by the New York court. In re Lewis's Estate, 32 La.Ann. 385.
Further discussion of these two matters would seem to be gratuitous. Therefore, I respectfully concur.
Rehearing denied.
AYRES, J., dissents from refusal.
NOTES
[1] "Art 2400. All property acquired in this state by non-resident married persons, whether the title thereto be in the name of either the husband or wife, or in their joint names, shall be subject to the same provisions of law which regulate the community of acquets and gains between citizens of this State."
[2] "The Acts of the legislature of any State. Territory, or Possession of the United States, or copies thereof, shall be authenticated by affixing the seal of such State, Territory or Possession thereto.

"The records and judicial proceedings of any court of any such State, Territory or Possession, or copies thereof, shall be proved or admitted in other courts within the United States and its Territories and Possessions by the attestation of the clerk and seal of the court annexed, if a seal exists, together with a certificate of a judge of the court that the said attestation is in proper form.
"Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken. June 25, 1948, c. 646, 62 Stat. 947." [28 U.S.C.A. § 1738]
[3] It was later recognized that the constitutional requirement of full faith and credit did not bar an additional award in the second state unless the award in the first state was actually exclusive in nature. Industrial Commission of Wis. v. McCartin, 330 U.S. 622, 67 S.Ct. 886, 91 L.Ed. 1140 (1947). However, the fundamental precepts of Magnolia v. Hunt, supra, remain unchanged.
[4] In Durfee v. Duke, 375 U.S. 106, 84 S.Ct. 242, 11 L.Ed.2d 186 (1963) the following language is pertinent:

"However, while it is established that a court in one State, when asked to give effect to the judgment of a court in another State, may constitutionally inquire into the foreign court's jurisdiction to render that judgment, the modern decisions of this Court have carefully delineated the permissible scope of such an inquiry. From these decisions there emerges the general rule that a judgment is entitled to full faith and credit even as to questions of jurisdictionwhen the second court's inquiry discloses that those questions have been fully and fairly litigated and finally decided in the court which rendered the original judgment.
"With respect to questions of jurisdiction over the person, this principle was unambiguously established in Baldwin v. Iowa State Traveling Men's Assn., 283 U.S. 522, 51 S.Ct. 517, 75 L.Ed. 1244. There it was held that a federal court in Iowa must give binding effect to the judgment of a federal court in Missouri despite the claim that the original court did not have jurisdiction over the defendant's person, once it was shown to the court in Iowa that that question had been fully litigated in the Missouri forum. `Public policy,' said the Court, `dictates that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest; and that matters once tried shall be considered forever settled as between the parties. We see no reason why this doctrine should not apply in every case where one voluntarily appears, presents his case and is fully heard, and why he should not, in the absence of fraud, be thereafter concluded by the judgment of the tribunal to which he has submitted his cause." 283 U.S. 525-526, 51 S.Ct. 517, 75 L.Ed. at 1247." (Emphasis supplied). [Durfee v. Duke, 375 U.S. 106, 84 S.Ct. 242, 11 L.Ed.2d 186, 191, 192]
[5] See Milliken v. Myer, 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 278 (1941) where the Court made the following statements:

"Where a judgment rendered in one state is challenged in another, a want of jurisdiction over either the person or the subject matter is of course open to inquiry. * * * But if the judgment on its face appears to be a `record of a court of general jurisdiction, such jurisdiction over the cause and the parties is to be presumed unless disproved by extrinsic evidence, or by the record itself.' Adam v. Saenger, supra (303 U.S. 59, at p. 62, 58 S.Ct. 454, 82 L.Ed. 649, 651). In such case the full faith and credit clause of the Constitution precludes any inquiry into the merits of the cause of action, the logic or consistency of the decision, or the validity of the legal principles on which the judgment is based. * * * Whatever mistakes of law may underlie the judgment * * * it is `conclusive as to all media concludendi.' Fauntleroy v. Lum, supra (210 U.S. 230 at p. 237, 28 S.Ct. 641, 52 L.Ed. 1039, 1042)." [311 U.S. 457, 462, 61 S.Ct. 339, 342, 85 L.Ed. 278, 282, 283]
[6] See LSA-C.C.P. art. 532.
[7] Professor Leflar has made the following observation:

"It must be remembered, whichever law be chosen, that the situs has a sort of primary control over property within its borders. The situs may refer the determination of marital interests in the movable to the law of the domicile, or it may determine the matter by its own law, as it pleases. For example, the Louisiana community property statutes are expressly applicable to all property, movable or immovable, acquired in Louisiana by non-residents. The great body of American authority, however, is to the effect that the law of the domicile, rather than that of the situs, at the time of acquisition controls * * *" [Robert A. Leflar, The Law of Conflict of Laws, sec. 176 (1959)]
[8] Worthy of note are the comments of the author in 42 Tulane Law Review 662 (1968).