Keating, J.
Powell Crichton died on November 15, 1962. A native of the State of Louisiana, he apparently migrated to this State early in life. He was a member of the New York Bar and resided for many years in Westchester County.
Mr. Crichton was twice married. His first wife died in 1923. Two years later he took his second wife, Martha, who along with two children of their marriage and the two children of the first marriage, survived him. The marriage of Martha and Powell Crichton was apparently not a happy one, and the couple separated 10 years later in 1935. Although the separation did not end in divorce, the couple lived separate and apart from 1935 until Powell’s death.
The will of Mr. Crichton made no provision for his second wife. Instead, all of his estate passes, under the terms of his will, in trust, with the income payable in varying percentages to his four surviving children. The estate was valued at approximately $360,000. The bulk of that property consisted of bank accounts in Louisiana and stocks and bonds held in custody accounts in that State.[1] In addition to this personal property, the deceased left real property also located in Louisiana.
The will of Mr. Crichton named his secretary, Margaret S. Hemingway, as executrix of the estate. Miss Hemingway qualified in the State of New York where the will was probated and in the State of Louisiana where ancillary proceedings were instituted. On June 3, 1965, Miss Hemingway as ancillary executrix initiated in Louisiana a proceeding for the approval of her inventory and for the computation of the Louisiana *128 inheritance taxes. The widow asserted a claim to community-property rights in the personal property there inventoried, which was objected to by the son and daughter of the first marriage. The preliminary exceptions of the son and daughter to the jurisdiction of the Louisiana court to determine the ownership of the personal property were rejected by the Louisiana court, and on January 4, 1966 that court issued an order “ permanently ” restraining the executrix from disposing of or removing the property from Louisiana. As of this date, the Louisiana courts have yet to make a ruling on the merits of the widow’s claim.
While these proceedings were taking place in Louisiana the executrix filed an intermediate account in New York on September 20, 1965. The account set forth as allowed but unpaid the widow’s share of the community property in the sum of $156,000.
On December 2, 1965 the daughter of the first marriage filed an objection to the allowance of the community property claim on the ground that (1) Louisiana’s community property laws were inapplicable; (2) under Louisiana law the claim was invalid; and (3) the widow had no rights except to take against the will as provided for in section 18 of the Decedent Estate Law — a right which she had not chosen to exercise.
The widow appeared and filed an objection to the inclusion in the account of items being accounted for in Louisiana on the ground that (1) they were being held by Margaret Hemingway as ancillary executrix in Louisiana and had not come into her hands as domiciliary executrix and (2) the Louisiana court had enjoined the ancillary executrix from removing or disposing of those items.
On a motion for partial summary judgment made by the daughter, the Surrogate held that Louisiana’s community property laws were not applicable and he sustained the objection to the allowance of the claim for community property.[2] The executrix and the widow appealed to the Appellate Division (Second Department) which unanimously affirmed. During the course of that proceeding, the widow’s appeal was dismissed *129 for failure to prosecute. The executrix appeals by leave of this court from the order of the Appellate Division.
There are a number of questions which must be resolved by this appeal. The first of these relates to the jurisdiction of the Surrogate to determine whether or not the widow has a community interest in the property in question. It is urged that the [1] ‘ Surrogate’s Court erred in determining the ownership of property situated in Louisiana since the Surrogate’s Court did not have jurisdiction over such property nor over the ancillary executrix appointed in Louisiana.”
There is little question but that the Surrogate lacked the power to determine the rights of persons, not parties to this proceeding and over whom he had no jurisdiction, in the bank accounts, stocks and bonds located in Louisiana. (Hanson v. Denckla, 357 U. S. 235; Riley v. New York Trust Co., 315 U. S. 343; Baker v. Baker, Eccles & Co., 242 U. S. 394.) The Surrogate, however, does have the power to render a decree which is binding on those persons over whom he has in personam jurisdiction. (Hanson v. Denckla, supra, p. 254.)
It is not disputed that the Surrogate had such jurisdiction over the widow and other beneficiaries of the estate. The Surrogate also had jurisdiction over the sole executrix of the estate. The authority of the executrix to represent the estate is recognized in Louisiana and New York and, therefore, any judgment rendered in .this jurisdiction is binding on her both here and in Louisiana. (Carpenter v. Strange, 141 U. S. 87, 104; Helme v. Buckelew, 229 N. Y. 363, 367; Turley v. Dreyfus, 33 La. Ann. 885; Restatement, Conflict of Laws, 1st and 2d [Tent. Draft], §§ 506, 510; Leflar, Conflict of Laws, § 195).
The Surrogate, therefore, had jurisdiction to render an in personam judgment conclusively resolving the legal issues presented by this case. That he had subject-matter jurisdiction to determine whether the wife was the owner of property listed in the name of the decedent certainly cannot be questioned. (Surrogate’s Ct. Act, § 40).
It is urged, however, that the permanent injunction issued by the Louisiana court, pending termination of the proceeding in that jurisdiction, is entitled to full faith and credit and precludes a determination on the merits by the courts of this State. This order of the Louisiana court, though labelled per *130 manent, is nothing more than an injunction pendente lite, issued for the purpose of preserving the status quo until the Louisiana courts decide the issue on the merits. The order refers to the property in question as “ allegedly ” belonging to Mrs. Crichton and refers to her “ alleged ” interest therein. It is not a final order and, since there is no final Louisiana judgment on the merits, the courts of this State are not prohibited by the full faith and credit clause from dealing with the case on the merits.
The discussion thus far has been confined to the preliminary questions presented by this appeal. The main issue posed for our consideration is the choice of the applicable law.
Louisiana is one of several States of the Union which regulate the property rights of married persons through a system of laws known as community property. While this opinion is not the place for a detailed study of the community property system in Louisiana[3], a somewhat general discussion of those laws is appropriate.
In the absence of a marriage contract to the contrary, every marriage in the State of Louisiana “ superinduces of right” the partnership of “ acquets and gains ”. (La. Civ. Code of 1870, art. 2399.) By virtue of this provision all property acquired by either spouse during marriage becomes the property of both and, upon dissolution of the marriage or upon the death of either spouse, the property is divided equally between the two or between the surviving spouse and the heirs of the deceased. (La. Code of 1870, art. 2406.) During the marriage, however, the husband has complete control of the property and he may dispose of movable property by gift or sale. (La. Code of 1870, art. 2404; Oliphint v. Oliphint, 219 La. 781 [1951].) For the purpose of income tax laws, however, the wife is regarded as having a present interest as opposed to a mere expectant interest in the property. (Bender v. Pfaff, 282 U. S. 127.)
It should be noted that not all of the property of the spouses becomes part of the community of “ acquets and gains.” Property owned by either party prior to the marriage is not included nor is the property acquired during the marriage by gift, devise or bequest. (See Morrow, Matrimonial Property Law in Louisiana, supra.)
*131 These rules just enumerated are part of ‘ an ingenious, complex, and highly purposeful distribution of property rights between husband and wife ” (United States v. Yasell, 382 U. S. 341, 351). It is obvious, however, that Louisiana has no interest in regulating the property rights of married persons who are domiciled elsewhere, who were not married in that State nor ever resided there as husband and wife. Indeed, the Louisiana courts have recognized this to be the case. (See Hyman, Lichtenstein & Co. v. Schlenker & Hirsch, 44 La. Ann. 108.)[4]
The Louisiana Legislature has determined, however, that its community property laws should govern property acquired in Louisiana by nonresidents after their marriage. (Code of 1870, art. 2400.)[5] While it has been suggested that this action is indicative of the strength of the community property system in Louisiana (Morrow, Matrimonial Property Law in Louisiana, 34 Tul. L. Rev. 3, 12, supra), no reason has been suggested, either by the appellant or the authorities on Louisiana law, for the application of the community property laws of Louisiana to intangible personal property of those married and domiciled in other jurisdictions.
An examination of the context in which article 2400 was enacted would appear to indicate that it was intended to apply to property purchased by nonresidents who, subsequent to the acquisition of the property, become residents of Louisiana. In two cases decided by the Louisiana Supreme Court shortly before the enactment of article 2400, it was held that the real *132 property of such persons located in Louisiana was not subject to the community property laws of Louisiana but rather to the laws of the State where the owners were domiciled at the time the property was acquired. (Huff v. Borland, 6 La. Ann. 436; Wolfe v. Gilmer, 7 La. Ann. 583.) Louisiana does, of course, have a substantial interest in regulating the property rights of married persons domiciled in Louisiana, regardless of when the property was acquired, and it is, therefore, reasonable to assume that the effectuation of this governmental interest motivated the enactment of article 2400. (Cf. Addison v. Addison, 62 Cal. 2d 558.) It might be noted that, although the Louisiana statutes subject to the community of “ acquets and gains ” all property held by persons married in Louisiana and all property acquired by persons married in other jurisdictions (art. 2399, supra) after they become residents of Louisiana (La. Code of 1870, art. 2401), no provision other than article 2400 is applicable to property acquired in Louisiana by nonresidents who later move to Louisiana.
In any event, while we assume that the presence of the stocks, bonds and bank accounts in Louisiana gives that State the power to adjudicate rights in that property according to its own laws, New York, as the State in. which Martha and Powell Crichton were domiciled during their marriage,[6] certainly has an interest sufficient to justify the application of its law without violating the full faith and credit clause of the Federal Constitution. (Richards v. United States, 369 U. S. 1, 15; Hanson v. Denckla, 357 U. S. 235, 253, supra; Crider v. Zurich Ins. Co., 380 U. S. 39; Carroll v. Lanza, 349 U. S. 408; Pacific Employers Ins. Co. v. Industrial Acc. Comm., 306 U. S. 493; see, generally, Leflar, Constitutional Limitations on Free Choice of Law, 28 Law & Contemp. Prob. 706)[7]. And in this litigation we must determine whether to give effect to the attempt of Louisiana to regulate the marital relationship of New York domiciliaries.
*133 The traditional choice of law rule in this area is one which looks to the law of the marital domicile to determine the rights of the husband and wife in property acquired during coverture. (Wyatt v. Fulrath, 16 N Y 2d 169, 172; Matter of Majot, 199 N. Y. 29, 32; Matter of Mesa y Hernandez, 172 App. Div. 467, affd. 219 N. Y. 566.) This rule has, however, been rejected by this court on at least two occasions, apparently for the reason that it failed, as most traditional conflict of laws rules do, to take cognizance of the policies of jurisdictions other than those which have what is regarded as the sole controlling contact and the interests which those other jurisdictions have in the application of their laws. (Hutchison v. Ross, 262 N. Y. 381; Wyatt v. Fulrath, 16 N Y 2d 169, supra.) In both these cases we applied the law of a jurisdiction other than that of the marital domicile, and the appellant, in effect, urges that those cases represent the rule that, in all cases, New York will now apply the law of the situs of the intangible property, that is the law of the jurisdiction in which the documents embodying the intangible property rights are found.
We do not so read our decisions in Wyatt and Hutchison, nor, for reasons which shall be alluded to, should they be so read. The choice of law decision we must make in this case should be guided by the same considerations that have guided our decisions in other choice of law cases (Babcock v. Jackson, 12 N Y 2d 473; Downs v. American Mut. Liab. Ins. Co., 14 N Y 2d 266; Matter of Bauer, 14 N Y 2d 272, 278 [dissenting opinion of Fuld J., adopted by the Legislature in EPTL 3-5.1, subd. (g), par. (2), el. (c) ]; cf. Matter of Bulova, 14 A D 2d 249) and which were, in essence, responsible for our decisions in Wyatt and Hutchison.
The choice of law problem here should be resolved by an examination of the contacts which Louisiana and New York have with this controversy for the purpose of determining which of those jurisdictions has the paramount interest in the application of its law. As we noted in Dym v. Gordon (16 N Y 2d 120, 124), this process requires us “ first to isolate the issue, next to identify the policies embraced in the laws in conflict, and finally to examine the contacts of the respective jurisdictions to ascertain which has a superior connection with the occurrence and thus would have a superior interest in having its policy or law applied.” (See, also, dissenting opinion of Fuld, J., in *134 Dym v. Gordon, supra, p. 130; Macey v. Rozbicki, 18 N Y 2d 289, 292, concurring opinion of Keating, J.)
The issue in this case is whether the community property laws of Louisiana should he applied to govern the property rights of New York domiciliaries in intangible personal property acquired during coverture. From the previous discussion, it is clear that the community property system is designed to regulate the property rights of married persons and, in particular, to protect the interest of each spouse in the property accumulated during marriage. (See United States v. Yasell, supra.) For reasons which become obvious merely in stating the purpose of the rule, Louisiana has no such interest in protecting and regulating the rights of married persons residing and domiciled in New York.
The State of New York which has such an interest has not adopted a community property system. Instead it has sought to protect a surviving spouse by giving her a right to take one third of the entire estate of the deceased as against a testamentary disposition by which the deceased has attempted to exclude her from a share of the estate. (Decedent Estate Law, § 18.) And, depending upon the nature of the property in the estate, a surviving spouse under New York law might well be entitled to receive a greater portion of the over-all estate than under the community property system.
By affording the surviving spouse such a right in the estate of the deceased spouse, the Legislature has sought to preserve the right of the testator to distribute his property as he desires, while at the same time to provide protection for the surviving spouse. New York, as the domicile of Martha and Powell Crichton, has not only the dominant interest in the application of its law and policy but the only interest. (See McSwain v. McSwain, 420 Pa. 86, 90-97.)
It is urged by the appellant that the Louisiana contacts with this case give it the paramount interest in the application of its law. Among the contacts which are urged as being significant are the fact the deceased was born in Louisiana, that, although he was domiciled in New York, the bulk of his fortune was made in Louisiana, and that the documentary evidences of his intangible property are located in that jurisdiction. Exactly how these contacts are related to the policies sought to be vindicated by *135 Louisiana’s community property laws is not made clear. The reason, no doubt, is that they have no relation whatever.[8]
Up to this point we have not considered whether the Louisiana courts would, in fact, apply their own law to determine the widow’s rights in the property in question. Although it would appear from the unequivocal wording of the statute that this would be the case, the previous discussion of the context in which article 2400 was enacted, as well as the pertinent Louisiana decisions in this area, leads to the conclusion that the Louisiana courts might well apply New York law. Perhaps the leading Louisiana case in this area is Williams v. Pope Mfg. Co. (52 La. Ann. 1417 [1900]). There the Supreme Court of Louisiana held that a cause of action for personal injuries suffered in Louisiana was an intangible property right which had its legal situs at the domicile of the married woman and could not be said to have been property acquired in Louisiana. Therefore, the plaintiff wife, a nonresident of Louisiana, was permitted to sue instead of her husband. In discussing the basis of its decision the court wrote (p. 1441): “ [The cause of action] is to be treated and considered as personal property, its legal situs is at the matrimonial domicile of the plaintiff in the state of Mississippi, and for that reason cannot be considered as a community asset with its domicile in the state of Louisiana; and, being a debt, or chose in action, it belongs and attaches to the person of the plaintiff, follows her wherever she goes, and possesses no other situs than as she is pleased to give it. ’ ’
This case was distinguished in a later decision of the Louisiana Supreme Court. The court appeared to indicate that the basis of *136 the decision was not that article 2400 was inapplicable but rather that it would not be applied where the domiciliary law was not inimical to the policy of the State of Louisiana. (Matney v. Blue Ribbon, Inc., 202 La. 505 [1942]:)
The application of-New York law to the facts in this case could hardly be said to be inimical to the policy of Louisiana. The protection afforded the wife under our law certainly makes adequate provision for'her financial security. Indeed, as noted earlier, it can even result in the wife’s receiving a greater interest in the estate of the deceased than under Louisiana law. Therefore, whether Williams or Matney are regarded as controlling, a rather strong argument can be made that the Louisiana courts,' under these circumstances, would not apply article 2400.
"The remaining Louisiana cases in this area are generally conflicting[9] and their over-all effect has led one of the leading commentátors on the Louisiana community property system to conclude that “ the question of the application of [article] 2400 to personal property may be said to be unsettled.” (Daggett, Community Property System of Louisiana 113 [1945]; see, also, Marsh, Marital Property in Conflict of Laws 197-201 [1952]; Neuner, Marital Property and the Conflict of Laws, 5 La. L. Bev. 167, 170 [1943].)
■ The unsettled nature of Louisiana law, along with the fact that the deceased could have given his spouse by will in New York the same benefits she would have been entitled to under Louisiana law, refute the contention that the defendant, in leaving his property in Louisiana, intended to vest in a woman from whom he had been separated for nearly 30 years a right to one half of his personal estate accumulated solely through his own effort and labor. For this reason and because of the differing governmental interests involved, this case is distinguishable from Hutchison v. Ross (262 N. Y. 381, supra) and Wyatt v. Fulrath (16 N Y 2d 169, supra), relied upon by the appellant in support of her argument for the application of Louisiana law.
In the latter case, a married couple domiciled in Spain — a nation having a community property system similar to that of *137 Louisiana — placed, cash and • securities in New York for safekeeping and investment. . A substantial portion of this property was placed with.New York custodians in joint accounts. The husband, and wife either expressly agreed in writing that the New York law of survivorship would apply or agreed to a written ■form of survivorship account conformable to New York law.
Belying upon sections Í2-a of the Personal Property Law and 47 of the Decedent Estate Law, which are designed to encourage investment of funds in this State by permitting a nondomiciliary to designate New York law as applicable to determine questions of law relating to testamentary dispositions of personal property located here as well as inter vivas trusts having a situs in this State, we held that New York law and not the Spanish community property laws would govern. In so doing, we cited the earlier case of Hutchison v. Boss (supra) in which the court, speaking through Judge Lehman, relying upon section 12-a of the Personal Property Law, held that it was the policy of this State to permit out-of-State settlors of trusts to designate that rights in that'property be determined, by New York law.
In both these cases we were giving effect to New York’s policy and governmental interest. That this was our only concern .is evidenced by the fact that in Wyatt we did not apply New York law to intangible personal property which had a situs in England and which had been removed to this State after the decedent’s death, but deferred to whatever interest that jurisdiction might have by indicating that its whole law — local law and choice of law rules — should govern. “ The reasons grounded on New York policy and affected by the physical transfer of the property to New York during the lifetime of the spouses and by their directions relating to it do not necessarily apply to property of Spanish nationals placed in a third country during their lifetime.” (Wyatt v. Fulrath, supra, p. 175; emphasis added.)
In situations such as that present in this case, where the foreign jurisdiction has no interest in the application of its law, where there was no clear expression of intent that foreign law govern[10] and where we have the power to apply our own law and *138 give effect to the policy this State has adopted in regulating the rights of married persons we should apply our own law.
The order appealed from should be affirmed, with costs to all parties appearing and filing separate briefs payable out of the estate.
Chief Judge Fold and Judges Van Voorhis, Burke, Scileppi, Bergan and Breitel concur.
Order affirmed.

. The decedent owned lands in Louisiana containing oil and gas deposits. This property was managed by his brother who apparently invested the income derived therefrom in the stocks and bonds and maintained the bank accounts.

. The order of the Surrogate related only to the intangible personal property located in Louisiana. The respondents did not question the applicability of Louisiana law to the real property located in Louisiana,

. See Morrow, Matrimonial Property Law in Louisiana, 34 Tul. L. Rev. 3 (1959).

. Prior to the enactment of article 2400 of the Code of 1870 (infra, n. 5), the Louisiana courts refused to apply the community property laws to property owned by nonresidents even where real property located in Louisiana was involved. (Succession of McGill, 6 La. Ann. 327 [1851]; Huff v. Borland, 6 La. Ann. 436 [1851]; Wolfe v. Gilmer, 7 La. Ann. 583 [1852].) Indeed, in at least one case after the enactment of the statute the court completely ignored the statute and held that real property purchased by a nonresident did not become community property. (Marlatt v. Citizen’s State Bank & Trust Co., 180 La. 387 [1934]; contra Smith v. Gloyd, 182 La. 770 [1935]; Stanton v. Harvey, 44 La. Ann. 511 [1892]; but cf. Freret v. Taylor, 119 La. 307 [1907].) The cases are discussed in Marsh, Marital Property in Conflict of Laws, 197-201.,

. The statute provides: “All property acquired in this State by non-resident married persons, whether the title thereto be in the name of either the husband or wife, or in their joint names, shall be subject to the same provisions of law which regulate the community of acquets and gains between citizens of this State.”

. It appears that Martha Crichton resided in Bermuda at the time of the testator’s death.

. See United States v. Yazell (supra) for a discussion of the interest a State has in the application of laws regulating the marital property rights of its own domiciliaries and the importance which the Supreme Court attaches to giving effect to that State interest. The case involved a choice between the application of Federal or State law. The court held that, in the absence of a clear congressional intent that Federal law govern, the Federal courts should apply the law of the marital domicile.

. Contacts obtain significance only to the extent that they relate to the policies and purposes sought to be vindicated by the conflicting laws. Once these contacts are discovered and analyzed they will indicate (1) that there exists no true conflict of laws, as in the case at bar and as in most choice of law cases, or (2) that a true conflict exists, i.e., both jurisdictions have an interest in the application of their law. In the former case, of course, the law of the jurisdiction having the only real interest in the litigation will be applied. (Babcock v. Jackson, supra; Macey v. Rozbicki, supra; Oltarsh v. Aetna Ins. Co., 15 N Y 2d 111.) In the case of a true conflict, -while our decisions have normally resulted in application of forum law (Wyatt v. Fulrath, 16 N Y 2d 169, supra), we are not as yet prepared to formulate what may be deemed a rule of general application but prefer rather to give further consideration to the question as the cases arise. (See Currie, The Disinterested Third State, 28 Law & Contemp. Prob., 754, 756-764.)

. See footnote 4 supra.

. If the purpose of .such an expression of intent by a New York decedent is to avoid the New York'statutory.provision for the protection of the surviving spouse, we would not, of course, give, effect to it.