OPINION OF THE COURT
Millard L. Midonick, J.
This proceeding raises the choice of law issue which was not before the court in its prior decision herein. (Matter of Renard, 100 Misc 2d 347, affd 71 AD2d 554, mot for lv to app den 48 NY2d 609.) The decree admitting the will to probate restrained the executors from distributing the assets until the further order of this court. The purpose of this restraint was to permit the determination of the claim asserted by decedent’s son to the forced share interest he would be awarded by French law against the provisions of his mother’s will.
The petitioning executors now request approval of their proposed distribution of the assets in conformity with the *32 will. Decedent’s son objects and seeks one half of the “residuary estate” “after appropriate credits for general bequests to him” in accordance with French law.
The foundation of the son’s claim is that his mother died domiciled in France, which is not disputed. The facts here were detailed in the opinion cited above. This decedent was born a French citizen in 1899. For approximately 30 years, from 1941 to 1971, she was domiciled in New York. During that time, she became a United States citizen (in 1965). From 1941 until 1948 she was employed in the New York City law offices of Sullivan and Cromwell, where she was secretary to one of that firm’s senior partners, William Nelson Cromwell. A lawyer-client relationship with the firm also arose in that period. On October 24, 1971 decedent returned to France, leaving the major portion of her assets here. She died on August 3, 1978, a French domiciliary. Her son, an adult, was then domiciled in California where he still resides. He is a citizen both of France and the United States.
After the decedent moved to France, Sullivan and Cromwell drafted a will for her which she executed in their Paris office, on June 20,1972. This is the will the parties refer to as the “New York” will. It was admitted to probate in this court after the defeat of the son’s motion opposing our jurisdiction. The executors are the Bank of New York and Arthur Dean, a Sullivan and Cromwell partner. This will designates New York law as controlling in the manner often recommended for wills of nonresidents disposing of assets located in this State: “ T hereby declare that I elect that this Will shall be admitted to original probate in the State of New York and shall be construed and regulated by the laws of the State of New York, and that the validity and effect thereof shall be determined by such laws.’ ” (EPTL 3-5.1, subd [h]; see Hendrickson, The Will of a NonResident Alien Disposing of Property in the United States, ABA National Institute on International Estate Planning [1980], pp 1, 25.)
The will purported to dispose of all of the decedent’s assets. She left her Paris apartment to her “adopted son”, the respondent here, subject to a life estate in her friend *33 Yvonne Daumarie (who predeceased her). That friend was also given the contents of the apartment, but if she did not survive they too went to the son. After legacies of $6,000 to the son and $15,000 to others, the balance was divided equally between a French friend and a French charity. The charity has appeared in this proceeding to oppose the son’s claim. The Attorney-General has also appeared in opposition thereto.
On December 15, 1977, presumably after the death of her said friend Yvonne Daumarie, the decedent executed the will which the parties herein refer to as her “French will”. It bequeathes the French apartment and its contents to her son, which is entirely congruent with their disposition under the New York will. This will was apparently drafted by a French notaire. It provides in effect that the legacy therein not be deemed an addition to the son’s forced share.
The parties have treated each of the wills as disposing of the assets physically located in the respective jurisdiction. The decedent’s assets physically situated in New York at her death consisted of bank accounts and a brokerage account valued at approximately $320,000. The French property was the apartment and its contents, the value of which was variously estimated, in connection with the motion to dismiss the probate proceeding, at $75,000 by the executors and $150,000 by the son.
The issue presented is whether the son is entitled to claim his right of forced heirship under French law against the decedent’s New York property. The law of France, in the tradition which the common law initially copied but rejected many centuries ago (United States v Perkins, 163 US 625) severely circumscribes the free testamentary disposition of property. In the case of a deceased parent survived by one child, the child is entitled to one half of the parent’s assets. The child’s forced share interest extends to assets given away during the parent’s lifetime. This share is apparently offset by lifetime gifts from the parent to the child. (Lawrence, The Basic Problems in the Administration of Estates with Multinational Interests and the Use of Multiple Wills or Other Substitutes, PLI International Estate Planning Handbook [1980], pp 139, 153.) The exe *34 cutors and the French charity concede that under French law an adopted son would have a one-half forced share. They cast the issue as being whether French law will be applied here. The parties have agreed that there is no need to prove French law at this stage of the proceeding.
No constitutional mandate directs the resolution of this choice of law issue since there are adequate points of contact with both France and New York to render the application of the local law of either acceptable under the due process standards of reasonableness and fundamental fairness. (Allstate Ins. Co. v Hague, 449 US 302.) The New York contacts are, inter alia, decedent’s 30 years’ residence in this State, the physical location of her assets here, and her evident intention, as expressed in her will, to have New York law apply. The principle contact with France is, of course, that decedent died domiciled there. The traditional conflict of laws approach turns to the law of the domicile to determine succession to personal property. (E.g., Restatement, Conflicts 2d, §§ 263, 265; Goodrich and Scoles, Conflict of Laws [4th ed], pp 323, 332-333.)
EPTL 3-5.1 sets forth a series of choice of law rules relating to wills. Subdivision (h) is the relevant portion but the earlier provisions provide a background: “The intrinsic validity, effect, revocation or alteration of a testamentary disposition of personal property, and the manner in which such property devolves when not disposed of by will, are determined by the law of the jurisdiction in which the decedent was domiciled at death.” (EPTL 3-5.1, subd [b], par [2].)
The terms “intrinsic validity” and “effect” are defined as follows: “ ‘Intrinsic validity’ relates to the rules of substantive law by which a jurisdiction determines the legality of a testamentary disposition, including the general capacity of the testator.” (EPTL 3-5.1, subd [a], par [4].) “ ‘Effect’ relates to the legal consequences attributed under the law of a jurisdiction to a valid testamentary disposition.” (EPTL 3-5.1, subd [a], par [5].) Subdivision (h) then provides an exception to the general rule: “Whenever a testator, not domiciled in this state at the time of death, provides in his will that he elects to have the disposition of his *35 property situated in this state governed by the laws of this state, the intrinsic validity, including the testator’s general capacity, effect, interpretation, revocation or alteration of any such disposition is determined by the local law of this state.” (Emphasis added.)
Clearly this decedent made the election contemplated in subdivision (h) to have the disposition of her property governed by New York law. The son contends that Matter of Clark (21 NY2d 478) constrains use to hold that this election does not permit a decedent to avoid the forced heirship of his or her domicile. Clark (supra) involved the language of a precursor statute, section 47 of the Decedent Estate Law, and a Virginia widow’s right of election.
Before reaching the issue of the effect of the decision in Clark (supra), it is important to analyze the legislative history of subdivision (h). This statute was enacted in 1966 (L 1966, ch 952, eff Sept. 1, 1967), after the death of the decedent in Clark, as part of the sweeping revision of the law of estates spearheaded by the Bennett Commission. The commission’s report to the Legislature on “The Decedent Estate Law As Affected By Conflict of Laws Considerations” recommended perpetuation of the rule that a non-domiciliary “may by his will declare that his property situated in this State shall be regulated by our law. In such case the reference ought to be to the local law of this State.” (Temporary State Commission on Modernization, Revision and Simplification of Law of Estates, Fifth Report, NY Legis Doc [1966], No. 19, p 659 [hereinafter cited as Fifth Report].) The Legislature enacted EPTL 3-5.1 (subd [h]) exactly in the language recommended by the commission (Fifth Report, at p 241). In discussing what was meant by the word “effect” used throughout the section, the Fifth Report says (at p 630) “ ‘effect’ involves the legal consequences that flow from an otherwise valid provision of a will, such as *** the * * * exclusion of a surviving spouse from testamentary benefits and the like.” Most significantly, the report informed the Legislature that the prior statute, section 47 of the Decedent Estate Law, allowed a nonresident testator to escape onerous restrictions on the testamentary disposition of property imposed by the laws of his own domicile, citing a case involving forced *36 heirship. (Fifth Report, at p 636.) This report was dated May 22, 1963. Thus, both the report and the enactment of the new statute preceded the 1968 decision in Clark (21 NY2d 478, supra), the decedent therein having died before the effective date of the current statute.
On the basis of this history, it would seem necessary to conclude that the Legislature intended subdivision (h) to permit a decedent, in a case like the one before the court, to avoid the application of the French law of forced heirship to her personalty by invoking New York law in her will. The decedent’s son argues here that Matter of Clark (supra) precludes this result. The decedent in Clark (supra) died in 1964 and his will, which invoked New York law, was thus governed by the provisions of the superseded section 47. He and his wife were Virginia residents but the bulk of his substantial estate in personal property was located in New York. His will created a preresiduary marital deduction trust for his widow, but this did not satisfy her right of election under Virginia law, which gave her an outright share. The court held section 47 of the Decedent Estate Law did not extend to this case. In reading this conclusion the court placed great reliance on the language of the last sentence of section 47 which read: ‘rWhenever a decedent, being a citizen of the United States or a citizen or a subject of a foreign country, wherever resident, shall have declared in his will that he elects that such testamentary dispositions shall be construed and regulated by the laws of this state, the validity and effect of such dispositions shall be determined by such laws” (Matter of Clark, 21 NY2d 478, 482, n 2, supra.)
The essence of the holding in Clark (supra) is that this language relates to testamentary dispositions and the right of election is not a testamentary disposition: “A regard for the language of the statute, as well as its legislative history and the policy to be served by it, clearly demonstrates that the words ‘testamentary dispositions’ and ‘the validity and effect of such dispositions’ do not encompass the right accorded a spouse to elect to take in opposition to the will”. (Matter of Clark, supra, at p 483; see Down v Morris, 31 AD2d 870.) None of these reasons for the court’s conclusion, however, apply to subdivision (h) in the new *37 statute. Clark’s (supra) analysis of the language of section 47, that a statute permitting a testator to designate New York law to govern “testamentary dispositions” does not extend to applying New York law to a right to elect against a will, does not apply to the language of subdivision (h). The new statute permits the designation of New York law to govern “the disposition of his property situated in this state”, a phrase which is broad enough, as a matter of plain meaning, to apply to all property passing as a result of a decedent’s death.
As we have seen, the legislative history of subdivision (h) supports the conclusion that the statute was intended to permit a nonresident testator to invoke New York law with respect to his assets physically situated here, and thereby avoid the forced heirship at his domicile. Section 47 had no such history. Most importantly, in 1911, when the sentence in question was added to section 47 (L 1911, ch 244) New York had no right of election for a surviving spouse. Such rights in personal property were not customary at that time in this country; widows generally had only dower rights in real property to which the language did not apply. (Reports of the Commission to Investigate Defects in the Laws of Estates, NY Legis Doc [1930], No. 19, p 87; see 2 Powell, Real Property, par 209.) Thus it could not be assumed that the 1911 Legislature contemplated that the language added to section 47 would operate to cut off a spouse’s domiciliary rights in personalty located in New York. The Bennett Commission found no legislative history concerning this 1911 amendment. The court in Clark (21 NY2d 478, supra) concluded that the language was added to section 47 to ratify cases permitting a testator to avoid the perpetuities and mortmain rules of his domicile with regard to personalty placed outside it.
With regard to the underlying considerations of policy, however, the Clark (supra) interpretation of section 47 was undoubtedly essential to provide a just choice of law rule at that time. In the course of a 1966 revision of the right of election statute (which added the right to elect against testamentary substitutes) an amendment was added providing that this election was not “available” to the spouse of a non-New York domiciliary. (EPTL 5-1.1, added by L *38 1966, ch 952.) This amendment was then further amended, effective September 1, 1967, concurrently with the effective date of subdivision (h), to make the New York right of election “available” where the decedent’s will elects to be governed by New York law. (L 1967, ch 686.) In the interval, however, any interpretation of section 47 other than the one reached by Clark (supra) would have meant that a nonresident decedent could have evaded all obligation to provide for a surviving spouse. Neither the New York law nor the domiciliary law would have applied. This loophole was closed simultaneously with the enactment of subdivision (h).
Respondent son argues that Clark (supra) represents the definitive interpretation of subdivision (h) because the Legislature has not changed the statute in the ensuing 12 years. But this argument falls with the fact that Clark (supra) necessarily represents only an interpretation of the former section 47 of the Decedent Estate Law. No amendment was necessary because section 47 was replaced by EPTL 3-5.1 for decedents dying after September 1, 1967. The court in Clark (21 NY2d 478, 482, supra) did note that section 47 had been replaced since Clark’s death “by a very similar provision” citing subdivision (h), but that was clearly by way of dictum and without examination of the legislative history discussed above.
In the light of the change in the statutory language, the radically different legislative history and the different policy factors surrounding the new statute, Clark (supra) should not be extended to apply to subdivision (h) or to sustain a forced heirship claim by a descendant. (See Conn Gen Stat Ann, § 45-170, subd [c] [eff Oct. 1,1980].) Indeed, the Court of Appeals seems to have recognized that there is a question as to whether Clark (supra) would apply to such a forced heirship claim, even if there had been no change in the statute (Matter of Steel, 31 NY2d 758; Watts v Swiss Bank Corp., 27 NY2d 270, 279.) Choice of law rules entail the balancing of divers policy considerations and where the Legislature has spoken, its decision should prevail. (Reese, Choice of Law: Rules or Approach, 57 Cornell L Rev 315; Leflar, Choice-Influencing Considerations in Conflicts Law, 41 NYU L Rev 267, 271.)
*39 After Clark (supra) limited the last sentence of section 47 to testamentary dispositions, the court adverted to the general principles of choice of law as supporting its conclusion that Virginia law should apply. The court did not apply Virginia law automatically as the law of the decedent’s domicile: “As between two states, the law of that one which has the predominant, if not the sole, interest in the protection and regulation of the rights of the person or persons involved should, of course, be invoked.” (21 NY2d 478, 485-486, supra). In Clark (supra) that State was held to be Virginia because it was the marital domicile — where both spouses had resided — and where the surviving spouse remained.
Thus even if subdivision (h) were not determinative here, the question is whether this decedent’s intention to have New York law apply can be effectuated under the prevailing choice of law approach. Clearly, during the 30 years of the testatrix’ New York residence, her son could not have had a forced heirship claim against her estate. This is not a case of the change of a matrimonial domicile involving a couple who moved their joint home to another jurisdiction; the decedent moved back to France but her son remained in California. (Cf. Matter of Crichton, 20 NY2d 124.) New York has a long-standing and substantial relationship with this decedent. When she moved to France, she retained her United States citizenship; she transferred her residence there but not the situs of her financial affairs.
France’s contact with this estate is as the decedent’s domicile at death. The traditional choice of law rule would presumably apply the law of the domicile but as the court pointed out in Crichton (supra) traditional conflict of laws rules often fail to take cognizance of the policies of other jurisdictions, and of the interests which those jurisdictions have in the application of their laws. (Matter of Crichton, supra, p 133.) Both Crichton (supra) and Clark (supra) make it clear that the Court of Appeals has moved away from mechanical choice of law rules to a balancing approach which requires the identification of the underlying policies in the conflicting laws of the relevant jurisdictions, and the examination of the contacts of those jurisdictions *40 to see which has a superior connection with the occurrence and thus a superior interest in having its policy or law followed. (Neumeier v Kuehner, 31 NY2d 121; Tooker v Lopez, 24 NY2d 569; Intercontinental Planning v Daystrom, Inc., 24 NY2d 372.)
The conflicting policies here are New York’s interest in the freedom of testamentary disposition, under which a child’s claim is protected only in very limited situations not relevant here, and France’s policy of narrowly circumscribing testamentary freedom in favor of descendants. Nor does the law of California, where the son resides, support forced heirship by children. Of all United States of America jurisdictions, only Louisiana follows the forced heirship policies of the civil law. One day a uniform law, or State-by-State laws, may adopt a protective rule for infant children of decedents to continue support during infancy, rather than forced heirship, after the parent’s death. (See Matter of Alexander, 90 Misc 2d 482, 486, affd 63 AD2d 612.) It has been suggested that the fundamental purpose of forced heirship systems is the protection of descendants residing in those jurisdictions. (Yiannopoulos, Wills of Movables in American International Conflicts Law: A Critique of the Domiciliary “Rule”, 46 Cal L Rev 185.) In any event, France’s interest in having its policy implemented, if any, is attenuated here by the fact that the decedent’s son was a resident of California when she died, and has remained such. (Cf. Neumeier v Kuehner, supra; Matter of Crichton, 20 NY2d 124, supra.)
The factor of decedent’s domicile at death need not be decisive. Apparently domicile came to be regarded as controlling because it was thought desirable to have a single law to provide unified results with regard to the distribution of a decedent’s personalty wherever located. (See 2 Beale, Conflict of Laws, § 303.1; Cheatham and Reese, Choice of the Applicable Law, 52 Col L Rev 959; Goodrich and Scoles, Conflict of Laws [4th ed], p 326; Scoles, Conflict of Laws and Nonbarrable Interests in Administration of Decedents’ Estates, 8 U Fla L Rev 151.) It has been suggested that domicile is diminishing as a basis for locating true governmental interests. (Leflar, Choice-Influencing Considerations in Conflicts Law, 41 NYU L Rev 267, *41 293-294; Conn Gen Stat Ann, § 45-170, subd [c] [eff Oct. 1, 1980]; see National Shawmut Bank of Boston v Cumming, 325 Mass 457; Johnson v La Grange State Bank, 73 Ill 2d 342.)
New York has abandoned the traditional choice of law rule with respect to tort actions, which looked to the law of the place where the tort occurred, in favor of the predominant interest approach. (E.g., Babcock v Johnson, 12 NY2d 473; Tooker v Lopez, 24 NY2d 569, supra.) Clark (21 NY2d 478, supra) and Crichton (20 NY2d 124, supra) apply that same balancing approach rather than simply looking to the decedent’s domicile. Crichton (supra) suggests that the predominant interest approach was applied in Wyatt v Fulrath (16 NY2d 169) where New York law was applied to sustain a survivorship interest in a joint tenancy account against forced heirship claims based on the law of the domicile. Testators with assets in more than one country are usually advised to make separate wills for each country (ABA National Institute on International Estate Planning [1980], p 14), and of course, even the traditional rule which looked to the domicile for a uniform approach to succession accepted the hegemony of the local law of the situs of real property to determine its succession. Multiple administration is almost inevitable in multinational estates, further eroding the need for a uniform rule. (See Conn Gen Stat Ann, § 45-170, subd [c] [eff Oct. 1, 1980].) Indeed, a respected commentator has suggested that the proclaimed rule which looked to the law of the domicile to govern testamentary succession to personalty was never supported by the cases in the area of international conflicts, particularly with respect to civil law forced heirship claims by the testator’s descendants, where the testator’s intention to have the law of the situs control was upheld by the courts. (See Matter of Prince, 49 Misc 2d 219; Yiannopoulos, Wills of Movables in American International Conflicts Law: A Critque of the Domiciliary “Rule”, 46 Cal L Rev 185, p 227.) There is a significant distinction between enforcing a foreign domiciliary law regarding a spouse’s elective share, which differs only in degree from our own law, since both recognize the spouse’s claim, and enforcing a descendant’s forced share which runs counter to our local *42 policy. (See Yiannopoulos, Wills of Movables in American International Conflicts Law: A Critique of the Domiciliary “Rule”, 46 Cal L Rev 185, 224; Matter of Prince, supra.) Nor do the needs of the international system (Restatement, Conflicts 2d, § 6, subd [2], par [a]) militate in favor of deference to the French law. France apparently applies its forced heirship law to personal property situated in that country, without regard to the fact that neither the testator nor the claiming child is domiciled there, so long as the child is a citizen of France. (Harris, International Estate Planning, Foreigners’ Estates in a United States Surrogate’s Court, ABA National Institute on International Estate Planning [1980], pp 335, 362.) In this court’s view the weight of the contacts with each jurisdiction must be considered. The French approach may reward a child’s recent acquisition of French citizenship or residence with a windfall in the way of a forced share in the parent’s estate. Our conflicts rules should not be extended to sanction such an approach, which might reward such changes made in contemplation of imminent death.
It seems to this court that the domestic policy of testamentary freedom from forced heirship claims should prevail under the circumstances of this case, in the light of the decedent’s long residence in New York and respondent’s nonresidence in France. The son cites no case enforcing a descendant’s forced share in these circumstances and the court does not believe that this case presents sufficient cause to apply French law. (See Cheatham and Reese, Choice of the Applicable Law, 52 Columbia L Rev 959.) Accordingly, the court holds that even if subdivision (h) were not controlling the paramount interest test for choice of law established in Matter of Clark (21 NY2d 478, supra) sanctions the application of New York local law in this case.
The court would like to acknowledge the helpful contribution of Professor Perry S. Reich who is representing the son as assigned counsel without compensation (except such allowance, etc., as the court may direct if the son is ultimately successful). His zeal and the quality of his efforts *43 herein as well as those of all counsel appearing were of significant assistance.
Application granted.