The **MONARCH INSURANCE COMPANY OF OHIO** and the Central National Insurance Company of Omaha, Plaintiffs–Appellees

v.

The **INSURANCE CORPORATION OF IRELAND LIMITED** and Frelinghuysen Livestock Managers, Inc., Defendants.

The **INSURANCE CORPORATION OF IRELAND LIMITED**, Defendant–Appellant

v.

**FRELINGHUYSEN LIVESTOCK MANAGERS, INC.**, Defendant–Appellee

The **INSURANCE CORPORATION OF IRELAND LIMITED** and Frelinghuysen Livestock Managers, Inc., Third–Party Plaintiffs,

v.

**RTC LIMITED**, Bloodstock International (Bermuda) Ltd., Leadenhall Limited, Peter James Meredew, John Richard Crawford Harris and Somerset Broking Limited, Third Party Defendants.

No. 598, Dockets 86–7801, 86–7803.

United States Court of Appeals, Second Circuit.

Argued Jan. 29, 1987.

Decided Dec. 7, 1987.

Robert E. Meshel, New York City (D'Amato & Lynch, New York City, Luke D. Lynch, Sr., John P. Higgins, of counsel), for appellant The Ins. Corp. of Ireland.

Geoffry D.C. Best, New York City (LeBoeuf, Lamb, Leiby & MacRae, New York City, Lawrence W. Pollack, John M. Aerni, of counsel), for appellee The Central Nat. Ins. Co. of Omaha.

Wayne R. Glaubinger, New York City (Rein, Mound & Cotton, New York City, Alan John Rein, of counsel), for appellee The Monarch Ins. Co. of Ohio.

John V. Fabiani, Jr., New York City (Killarney, Fabiani & Brody, New York City, Lorraine M. Brennan, of counsel), for appellee Frelinghuysen Livestock Managers, Inc.

Before OAKES, MESKILL and MAHONEY, Circuit Judges.

MAHONEY, Circuit Judge:

This appeal is taken from a final judgment entered in the United States District Court for the Southern District of New York, Robert L. Carter, *Judge*, after a jury verdict for plaintiffs The Monarch Insurance Company of Ohio ("Monarch") and The Central National Insurance Company of Omaha ("Central"). Plaintiffs alleged that defendant The Insurance Corporation of Ireland Limited ("ICI") breached various reinsurance contracts with plaintiffs. They also asserted that if those contracts were found to be not binding on ICI, defendant Frelinghuysen Livestock Managers, Inc. ("FLM") should be liable to plaintiffs because FLM, as agent for plaintiffs, was obligated to obtain binding reinsurance for the plaintiffs. ICI asserted counterclaims grounded in fraud, breach of fiduciary duty and negligence. After entry of final judgment for plaintiffs Central and Monarch, ICI appealed. FLM also cross-appealed, but has since withdrawn its appeal. Jurisdiction is founded upon diversity of citizenship.

### Background

On January 1, 1979, Central entered into a Livestock Insurance Management Agreement ("LIM Agreement") with FLM which authorized FLM to act as a managing general agent for Central with respect to bloodstock/livestock insurance.[1] The LIM Agreement authorized FLM to accept or decline risks in behalf of Central for bloodstock/livestock insurance, gave FLM broad authority to act for Central, and required FLM to reinsure 100% of all risks accepted on behalf of Central. On January 1, 1980, Monarch entered into an identical LIM Agreement with FLM.

During 1980 and 1981, FLM obtained the required reinsurance through Peter Meredew, a London insurance broker affiliated with a London brokerage firm, Burgoyne Alford, Ltd. In late 1981, Meredew left Burgoyne Alford and moved to another brokerage firm, Rooke, Taylor, Coombe, Ltd. ("RTC"). During 1982, prior to the reinsurance contracts at issue in this case, ICI reinsured Central and Monarch bloodstock/livestock risks.

In the early 1980's, FLM began to lose accounts because of intense rate competition. In early 1982, FLM president Adolph Vita contacted Meredew, whom Vita had previously used as a London agent, to try to arrange for a reinsurance rate schedule that would allow FLM to lower the rates it was offering in the market.

On March 16, 1982, ICI gave Meredew "binding authority" to bind ICI to accept bloodstock/livestock reinsurance. Later that month, Meredew telephoned Vita and offered him a reinsurance "facility" which would allow Vita to write insurance on behalf of Central and Monarch at competi-

---

1. The LIM Agreement defines this form of insurance as "animal mortality insurance and fire, lightning, and transportation coverage of animals ..."

tive rates. The reinsurance contracts were split evenly between ICI and another concern, the Secretan Syndicate at Lloyds of London ("Secretan"). Secretan has settled its accounts with plaintiffs, on the condition that all settlement payments will be returned to Secretan if ICI prevails in this litigation.

In April, 1982, FLM began using the reinsurance facility made available by RTC. On September 17, 1982, "cover notes"[2] were issued by Bloodstock International (Bermuda) Ltd. ("BIBL")[3] to FLM to confirm this arrangement, effective April 1, 1982 for one year.[4] Thereafter, at the request of Central and Monarch, ICI posted irrevocable letters of credit effective December 31, 1982 for one year in the amount of $1,062,874.52 (Central) and $863,464.25 (Monarch) in support of ICI's reinsurance obligations to Central and Monarch. On April 7, 1983, BIBL issued cover notes to FLM extending reinsurance coverage for an additional year effective April 1, 1983. In July, 1983, RTC advised FLM not to reinsure risks further under the renewed reinsurance facility. On September 15, 1983, ICI advised Central and Monarch that it did not consider itself bound by the reinsurance agreements allegedly evidenced by the BIBL cover notes, and would not pay claims arising thereunder. Central and Monarch thereupon used the previously provided letters of credit to pay bloodstock/livestock insurance claims, to the extent available, paid the balance of such claims with their own funds, and sued ICI for reimbursement of that balance, which they recovered pursuant to jury verdicts in favor of Central in the amount of $715,030.92 and Monarch in the amount of $442,221.24, in each case including prejudgment interest.

ICI counterclaimed, charging Central and Monarch with fraud, conspiracy, breach of fiduciary duty and negligence. In this connection, there was evidence that Meredew and others, including Vita of FLM, had conspired to issue cover notes to ICI on the one hand, and Central and Monarch on the other, showing differing rates of discount to ICI and to the ceding companies (Central and Monarch), thereby creating a "skim" that was divided among the conspirators. ICI's counterclaims "were dismissed as unproved because the evidentiary proof ICI sought to present to support these allegations constituted inadmissable hearsay" (quotation is from Judge Carter's ruling denying a post-trial motion for Rule 11 sanctions against ICI).

ICI also contests the evidentiary rulings to which Judge Carter refers in the above quotation. ICI further contends that the law of New Jersey, rather than New York, should have been applied below. ICI challenges the denial of its motion for judgment notwithstanding the verdict, claiming that no valid reinsurance contracts existed. In this connection, ICI points to conversations and correspondence which purportedly terminated RTC's authority to issue reinsurance in ICI's behalf prior to the issuance of the BIBL cover notes. Finally, ICI contends that RTC/Meredew was a dual agent for Central/Monarch/FLM and ICI, thus rendering the alleged reinsurance contracts voidable, and accordingly challenges the district court's refusal to charge the jury on dual agency.

For the reasons hereinafter stated, we reject ICI's contentions and affirm.

### Discussion

#### A. *ICI's Tort Counterclaims*

■ The evidence presented to support ICI's claim against Monarch and Central was slim. Moreover, no legally sufficient damage testimony was presented by ICI. ICI's principal witness on this issue conceded on cross-examination that he had "presented no evidence one way or the other as to whether ICI made money, lost

---

**2.** A cover note is a document evidencing the placement of insurance or reinsurance pending the issuance of a formal contract. A. 271, 378.

**3.** BIBL functioned as an intermediary between RTC and FLM.

**4.** There was testimony that it was common practice for reinsurance agreements to be made by telephone or telex and confirmed by cover note some months later.

money or broke even on this book of business [*i.e.*, the reinsurance of Central and Monarch risks]," and had not taken into account such factors as investment income, the exchange rate, or reinsurance and cognate protections obtained by ICI. A. 1297–98. Because damages are required under any of the theories advanced by ICI, *see, e.g., Mallis v. Bankers Trust Co.*, 615 F.2d 68, 80 (2d Cir.1980) (fraud, applying New York law), *cert. denied*, 449 U.S. 1123, 101 S.Ct. 938, 67 L.Ed.2d 109 (1981); *Becker v. Schwartz*, 46 N.Y.2d 401, 410, 413 N.Y.S.2d 895, 899, 386 N.E.2d 807, 811 (1978) (negligence); and *Brown v. Lockwood*, 76 A.D. 2d 721, 730, 432 N.Y.S.2d 186, 193 (2d Dep't 1980) (breach of fiduciary duty), these claims were properly dismissed.

## B. *Evidentiary Rulings*

■ ICI contends that the exclusion as hearsay of certain deposition testimony which it proffered at trial was erroneous. This evidence, ICI asserts, was admissible under Fed.R.Evid. 801(d)(2)(D) (statement by agent concerning a matter within the scope of his agency or employment not hearsay), 801(d)(2)(E) (statement by co-conspirator during the course and in furtherance of conspiracy not hearsay), and 804(b)(3) (statement against pecuniary or proprietary interest, or tending to subject declarant to civil or criminal liability, admissible as exception to hearsay rule). The excluded statements related primarily to the "skimming" scheme, and there was little or no independent evidence that any of the declarants functioned as agents of Central and/or Monarch, or conspired with them, concerning that scheme. The determination whether a statement is so contrary to a declarant's interest as to be admissible under Rule 804(b)(3) is largely committed to the discretion of the trial court, *United States v. Guillette*, 547 F.2d 743, 754 (2d Cir.1976), *cert. denied*, 434 U.S. 839, 98 S.Ct. 132, 54 L.Ed.2d 102 (1977), and we see no abuse of that discretion here. In any event, error may be predicated upon a ruling which excludes evidence only where "a substantial right of the party is affected...." Fed.R.Evid. 103(a); *see also* 11 C. Wright & A. Miller,

*Federal Practice and Procedure* § 2885 (1973). In view of the absence of any evidence of damage to ICI, no such showing was made here.

## C. *Application of New York Law*

The district court ruled specifically that New York, rather than New Jersey, law should apply "[i]n the absence of any asserted conflict of law between the two jurisdictions." ICI contends, however, that New Jersey applies a different negligence rule than New York, under which Monarch and Central would be liable to ICI because ICI was a member of an identifiable class which Central and Monarch had reason to know would suffer damages because of their negligence. *See People Express Airlines, Inc. v. Consolidated R.R. Corp.*, 100 N.J. 246, 262–67, 495 A.2d 107, 115–18 (1985), and *H. Rosenblum, Inc. v. Adler*, 93 N.J. 324, 461 A.2d 138 (1983). Thus, a conflict allegedly exists.

The district court was required to apply New York choice of law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Assuming a conflict exists, under New York law, the law of the state having the paramount interest in resolving the issue at hand applies. "Contacts obtain significance only to the extent that they relate to the policies and purposes sought to be vindicated by the conflicting laws." *Miller v. Miller*, 22 N.Y.2d 12, 17, 290 N.Y.S.2d 734, 738, 237 N.E.2d 877, 880 (1968) (quoting *In Re Estate of Crichton*, 20 N.Y.2d 124, 135 n. 8, 281 N.Y.S.2d 811, 820 n. 8, 228 N.E.2d 799, 806 n. 8 (1967)); *see also Schultz v. Boy Scouts of America*, 65 N.Y.2d 189, 491 N.Y.S.2d 90, 480 N.E.2d 679 (1985). ICI argues that the tortious conduct alleged "took place almost without exception in the State of New Jersey," and that New Jersey's interest in the dispute is accordingly paramount.

■ We disagree. As the district court noted, New York is Monarch's principal place of business, ICI and FLM both do business in New York, one of the contracts at issue was executed in New York, and

any damage to ICI occurred in Ireland. FLM's location in New Jersey, and the alleged occurrence of the tortious conduct there, do not suffice to render the district court's determination erroneous. In any event, no claim is made that New Jersey would allow recovery for negligence in the absence of proof of damages. In fact, the cases cited by ICI are to the contrary. *See People Express Airlines,* 100 N.J. at 267, 495 A.2d at 118; *H. Rosenblum, Inc.,* 93 N.J. at 334, 461 A.2d at 143.

D. *The Existence of Reinsurance Contracts Between the Parties*

Turning to the claims of Central and Monarch against ICI, we address first ICI's contention that no valid reinsurance contracts existed, and its motion for judgment notwithstanding the verdict was thus improperly denied. To succeed in this argument, ICI must show that "without weighing the credibility of the witnesses there can be but one reasonable conclusion as to the verdict." *Epoch Producing Corp. v. Killiam Shows, Inc.,* 522 F.2d 737, 742 (2d Cir.1975) (quoting *Brady v. Southern Ry Co.,* 320 U.S. 476, 479, 64 S.Ct. 232, 234, 88 L.Ed. 239 (1943)), *cert. denied,* 424 U.S. 955, 96 S.Ct. 1429, 47 L.Ed.2d 360 (1976).

ICI places heavy reliance upon a letter from Brian Ginger of ICI to Meredew dated May 13, 1982, which stated in part:

Bloodstock business now forms a major part of our General Accident portfolio and we have found it necessary to stop writing any further risks whilst we reconsider our Treaty arrangements.

We will probably arrange a new Treaty for purely Bloodstock/Livestock.

In the circumstances please cede no more new business to the Cover until further notice.

A. 1554; *see also* A. 1556–57 (letters of similar tenor from Ginger to Meredew dated October 8, 1982 and December 17, 1982).

■ The jury could properly have found, however, that the contracts were ratified by ICI. Ratification requires acceptance by the principal of the benefits of an agent's acts, with full knowledge of the facts, in circumstances indicating an intention to adopt the unauthorized arrangement. The intent can be "implied from knowledge of the principal coupled with a failure to timely repudiate, where the party seeking a finding of ratification has in some way relied upon the principal's silence or where the effect of the contract depends upon future events." *Julien J. Studley, Inc. v. Gulf Oil Corp.,* 282 F.Supp. 748, 752 (S.D.N.Y.1968), *rev'd on other grounds,* 407 F.2d 521 (2d Cir.1969). *See also Bernstein v. Centaur Ins. Co.,* 644 F.Supp. 1361, 1370 (S.D.N.Y.1986).

It is undisputed that ICI posted irrevocable letters of credit effective December 31, 1982, after the date of all relevant correspondence from Ginger to Meredew, in favor of Central and Monarch to be drawn upon should ICI default in its reinsurance obligations to Central and Monarch. Under these circumstances, the jury was clearly justified in concluding that ICI ratified the existing reinsurance contracts. *See Rothschild v. Title Guarantee & Trust Co.,* 204 N.Y. 458, 461, 97 N.E. 879, 880 (1912). ICI points to no occurrences thereafter that would limit the authority of RTC and Meredew with respect to the April, 1983 cover notes.

E. *Meredew's Alleged Dual Agency*

Finally, ICI asserts that Meredew acted as a dual agent for ICI and FLM (and therefore derivatively for Central and Monarch), and that the reinsurance contracts are accordingly void as a matter of law. ICI further contends that the district court erroneously rejected ICI's requested jury charge on this issue.

It is New York law that a contract entered into through an agent for both parties is voidable at the option of either party where the parties had no knowledge of the dual agency and the agent has any discretionary role whatsoever. *See Empire State Insurance Co. v. American Central Insurance Co.,* 138 N.Y. 446, 449–50, 34 N.E. 200, 214 (1893); *Hasbrouck v. Rymkevitch,* 25 A.D.2d 187, 189, 268 N.Y.S.2d 604, 607 (3d Dep't 1966); *see also Connors-Haas, Inc. v. Board of Educ.,* 44 N.Y.2d 860, 862, 407 N.Y.S.2d 474, 475, 378

N.E.2d 1043 (1978) (mem.) (parties can agree to a common agency).

The district court charged the jury that: ICI contends that RTC and Meredew were not only its agents but FLM's agents as well. That he acted in a dual capacity and that in issuing these cover notes he was FLM's agent and since he lacked authority to issue them the contracts are void. Plaintiffs and FLM counter by denying that Meredew and RTC were FLM's agent. They argue that RTC and Meredew were acting solely for ICI in issuing these reinsurance contracts and FLM dealt with Meredew and RTC at arm's length negotiation. A. 229.

This charge did not state the law of dual agency in the terms requested by ICI, which called for an explicit statement that "[i]f an agent has two principals with adverse interests, the agent may not act for both parties to a transaction unless he first fully discloses all the material facts to both parties and obtains their informed consent to so act." A. 240–41. The district court responded that "although [the requested charge] is the law under certain circumstances I think [such] a charge in this case would only confuse." A. 242.

 The district court apparently concluded that there was not enough evidence of a dual agency on Meredew's part to warrant a specific instruction to the jury on that question. This was a permissible reading of the record.[5] The pertinent testimony of Vita of FLM established only that RTC/Meredew was a "broker of record" for FLM to seek reinsurance, but explicitly denied any agency on Meredew's part in that connection, asserting that only FLM was authorized to act as the agent of Central and Monarch to negotiate on their behalf the terms of any reinsurance arrangements. This testimony accorded with the LIM Agreements which FLM had reached with Central and Monarch. The district court could properly conclude that the only

countervailing documentary evidence, an unexplained telex to RTC from a Central representative who was never called as a witness, *see* A. 1600, indicating somewhat broader authority for RTC as a broker of record, was insufficient to pose a jury issue concerning dual agency.

#### Conclusion

The judgment of the district court is affirmed.

---

**5.** It seems anomalous that Judge Carter included ICI's contention concerning dual agency in that portion of his charge which summarized the parties' contentions, in view of his implicit conclusion that there was not adequate evidence to support a jury's finding in ICI's favor on that issue. Any error in that regard, however, was favorable, rather than harmful, to ICI.